# EXHIBIT 2

UNITED STATES INTERNATIONAL TRADE COMMISSION

Washington, D.C.

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN COLOR INTRAORAL SCANNERS AND RELATED HARDWARE AND SOFTWARE** | INV. NO. 337-TA-1091 |

ORDER NO. 23:   DENYING 3SHAPE'S MOTION FOR SUMMARY DETERMINATION AND MOTION TO TERMINATE, AND RESOLVING ALL PENDING MOTIONS RELATED THERETO

(May 18, 2018)

Complainant Align Technology, Inc. ("Align") is the proprietor of the Invisalign® process, a system that utilizes digital modeling of a patient's teeth to create dental and orthodontia appliances. Respondent 3Shape Trios A/S also develops technology for taking digital images of teeth. In December 2015, Align and 3Shape Trios A/S entered into a "Scanner Agreement." Mot. Ex. 3. According to the recitals of the Agreement, 3Shape Trios A/S desired "to develop its scanning technology for compatibility with Align's Invisalign® process." *Id.*, Preamble. The 3-year agreement was to "enable scans from [3Shape Trios A/S]'s products, software and technology to become technically acceptable to Align." *Id.* §§ 1.1, 2.1. The Scanner Agreement includes a forum selection clause, in which the parties agreed to "irrevocably submit[ ] to the exclusive jurisdiction of the courts in Denmark to settle any dispute arising out of or in connection with this Agreement (including any non-contractual disputes or claims)." *Id.* § 18.

On November 14, 2017, Align filed a complaint against 3Shape A/S and 3Shape Inc., and the Commission instituted this investigation on December 14, 2017. *Certain Color Intraoral Scanners and Related Hardware and Software*, Inv. No. 337-TA-1091, Comm'n Notice

██████████

(Dec. 14, 2017); 82 Fed. Reg. 243 (Dec. 20, 2017). On March 15, 2018, I granted Align's unopposed motion for leave (1091-008) to file a second amended complaint adding 3Shape Trios A/S as a respondent. Order No. 11. Thus, this investigation involves three 3Shape entities: 3Shape A/S, 3Shape Inc., and 3Shape Trios A/S. Notably, however, the Scanner Agreement is between Align and only one of the 3Shape companies, namely 3Shape Trios A/S.

3Shape A/S and 3Shape Inc. ("3Shape") filed the present combined motion (1091-010) on March 13, 2018, for (1) "summary determination that the disputes in this Investigation are subject to the exclusive jurisdiction of the courts in Denmark" and (2) termination of this investigation. Mot. at 1. On March 19, 2018, Align filed an expedited motion (1091-012) for an extension of time to respond to 3Shape's motion, to March 28, 2018. Align filed a response in opposition to 3Shape's motion on March 23, 2018. 3Shape filed a motion for leave to file a reply (1091-015) on March 30, 2018, and Align filed a motion for leave to file a sur-reply (1091-018) on April 9, 2018. Both motions for leave were unopposed. *See* Align Statement of Non-Opposition (Apr. 9, 2018) (EDIS Doc. ID 641419); Align Mot. for Leave, at 1 (Apr. 9, 2018) (EDIS Doc. ID 641424). On April 18, 2018, Align filed a "notice of development" "to provide the ALJ with information regarding ongoing discovery that is related to" 3Shape's motion. On May 16, 2018, 3Shape filed a "supplemental submission regarding recent events" to highlight comments made an Align corporate officer at a recent public event.

I. **Termination of an Investigation Under Section 337 Involves Different Considerations than Dismissal of a District Court Complaint**

Much of the briefing on this motion cites legal principles that federal district courts apply when determining whether to enforce a forum selection clause. Patent actions in federal district court are initiated and terminated according to the Federal Rules of Civil Procedure and certain common law doctrines. In contrast, investigations under section 337 are initiated and terminated

2

according to statutory provisions, the Administrative Procedure Act, and Commission rules. *See Certain Bar Clamps, Bar Clamp Pads, and Related Packaging, Display, and Other Materials*, Inv. No. 337-TA-429, Comm'n Op., 2001 WL 36114993, at *2 (Feb. 13, 2001) (public version) ("Commission ALJs are not exercising judicial authority under Article III of the U.S. Constitution and in accordance with the Federal Rules of Civil Procedure, but rather under the authority delegated to the ALJs by the Commission. The Commission, in turn, is constrained by its statutory mandate, a legal constraint that does not similarly bind Federal courts."). Accordingly, the Commission is not required to follow the four-part test developed by the Second Circuit "to determine whether a case should be dismissed pursuant to a forum selection clause," as 3Shape proposes. Mem. at 7-8 (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)). Nor is the Commission bound by *forum non conveniens* factors, as were the courts in many of the cases cited by the parties. *See Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 60 (2013) (holding that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," rather than Rule 12(b)); *M/S Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (holding that forum selection clauses require a modification of the *forum non conveniens* doctrine, whereby the doctrine's usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum). The legal standards applied by the Commission are set forth below.

II.   **Section 337(c) Grants the Commission Discretion to Terminate an Investigation Based on a Prior Agreement Between a Complainant and Respondent**

Section 337 gives the Commission the discretionary authority to terminate an investigation in certain circumstances. 19 U.S.C. § 1337(c); *see* 19 C.F.R. § 210.21(a)(2). Relevant to this dispute, the Commission "may" terminate an investigation, in whole or in part,

3

██████████████████████████

"on the basis of an agreement between the private parties to the investigation." 19 U.S.C. § 1337(c). This discretion has been delegated to administrative law judges in the first instance. *See* 19 C.F.R. § 210.21(a) (an administrative law judge "may" terminate an investigation based on a private agreement "upon such terms or conditions as he [or she] deems proper").

The "agreement between the parties" delineated in section 337(c) can be an agreement formed prior to the investigation or an agreement executed after the investigation begins. For example, in *Certain Modified Vaccinia Ankara ("MVA") Viruses and Vaccines and Pharmaceutical Compositions Based Thereon*, the Commission exercised its discretion to terminate an investigation with respect to certain trade secret claims because the parties had entered into a binding arbitration agreement *before* the investigation was instituted. *See* Inv. No. 337-TA-550, Order No. 26, 2006 WL 1066635, at *3-4 (April 14, 2006), *determination not to review in* Notice (May 9, 2006). In *Certain Methods of Assembling Plastic Ball Valves and Components Thereof,* the parties entered into a settlement agreement *after* the Commission initiated the investigation. The Commission exercised its discretion in terminating the investigation based on the agreement. Inv. No. 337-TA-362, Order No. 5, 1994 WL 930206, at *2-3 (April 4, 1994), *determination not to review in* Notice (May 5, 1994).

The Scanner Agreement at issue here is a prior agreement between Align and 3Shape Trios A/S to litigate certain disputes in the courts of Denmark. Presuming that the clause applies to the parties and dispute here (an issue I need not decide given the conclusions I reach below), the question becomes whether the Commission should exercise its discretionary authority to terminate this investigation under 19 U.S.C. § 1337(c) on the basis of the forum selection clause.

Align argues that private parties cannot "agree to deprive the Commission of its statutory jurisdiction and its statutory mandate to hear and decide cases." Opp. at 12 (quoting

4

*Semiconductor Chips*, 2000 WL 1269386, at *20). While it is true that a private agreement will not alter the Commission's statutory jurisdiction, a private agreement may well influence how the Commission exercises its discretion in determining whether to terminate an investigation or allow it to proceed. This is not surprising because the Commission's determinations regarding unfair acts are often "dependent upon the private rights between parties in the position of complainant and respondent." *Young Engineers v. ITC*, 721 F.2d 1305, 1315 (Fed. Cir. 1983). A negotiated forum selection clause informs and constrains the private rights of the parties to the agreement, and thus may inform the basis for terminating an investigation.

Align also argues that "Commission's precedent and practice would not support termination of an investigation on the basis of a forum-selection clause in a private agreement in the absence of a judicial injunction enforcing that forum-selection clause." Opp. at 11. In support of its argument, Align states that "the Commission has repeatedly denied requests to terminate its investigations when those requests were based only on an invocation of a forum-selection clause in a licensing or another contractual agreement." Opp. at 12. The bright-line rule that Align advances does not follow from the examples Align has selected. In these examples, reviewed below, the Commission neither granted nor denied the motions to terminate the investigation based on a prior agreed-upon forum selection clause.

First, in *Semiconductor Chips*, the ALJ adopted the parallel district court's interpretation of a disputed term in a forum selection clause to hold that the clause did not cover investigations in the ITC. 2000 WL 1269386, at *19. The Federal Circuit reversed the district court's interpretation of the term. *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329-32 (Fed. Cir. 2000). On remand, the district court issued a preliminary injunction against the patent owner, ordering it to withdraw the ITC complaint as to one of the respondents, which it did.

5

███████████████████████████████████

*Semiconductor Chips*, Order No. 16, 2001 WL 128232, at *2 (Feb. 14, 2001). The Commission terminated the investigation as to that respondent based on the withdrawal of the complaint, not because the Commission was restrained by the forum selection clause. *Id.*

Second, in *Certain Digital Video Receivers and Hardware and Software Components Thereof*, the ALJ found that the forum selection clause did not apply because the disputes in the investigation did not arise out of, or relate to, the contract. Inv. No. 337-TA-1001, Initial Det., 2017 WL 3485153, at *380 (May 26, 2017). The ALJ then went on to opine that the forum selection clause arguments "are breach-of-contract claims, which are not a defense the Commission's statutory directive to investigate unfair trade practices (or to patent infringement)." *Id.*, 2017 WL 3485153, at *381. The Commission took "no position as to whether the [forum selection clause] provides a defense to the allegations against [the respondent]." *Id.*, Comm'n Op., at 2 (Dec. 6, 2017) (public version).

Third, in *Certain Magnetic Data Storage Tapes and Cartridges Containing the Same*, the ALJ found that the forum selection clause did not apply to the disputes in the investigation because the respondent was not a party to the relevant agreement, or a third-party beneficiary of the forum selection clause in the agreement. Inv. No. 337-TA-1012, Initial Det. at 368-69 (Sept. 29, 2017) (public version). As in *Digital Video Receivers*, the ALJ opined the forum selection clause arguments "are breach of contract claims, which are not a defense to the Commission's statutory directive to investigate unfair trade practices (or to patent infringement)." *Id.*, Initial Det. at 369. The Commission determined not to reach respondents' breach of contract defense. *Id.*, Comm'n Op. at 105 (Apr. 2, 2018) (public version).

3Shape's motion here is a request for termination under section 337(c) based on a private agreement between the private parties to resolve disputes as to their private rights in a specific

6

forum. None of the decisions above restrain the Commission's discretion in determining whether to grant such a motion.

### III. Enforcement of the Forum Selection Clause in the Scanner Agreement at Issue Here Contravenes a Strong Public Policy of the ITC

> The existence of a forum selection clause raises a series of potentially litigable questions. First, is the agreement enforceable? Second, if so, does the clause apply to the dispute at hand? Third, if so, is the clause mandatory or merely permissive—that is, does the clause establish the chosen forum as exclusive to others? Fourth, if so, does the clause mandate litigation in a federal or state or foreign court?

14D Fed. Prac. & Proc. Juris. § 3803.1 (4th ed.).

3Shape's motion can be resolved by answering the first question: is the Scanner Agreement's forum selection clause enforceable in this forum? The answer on these particular facts is no, the clause is not enforceable in this investigation because "enforcement would contravene a strong public policy of the forum in which suit is brought." *M/S Breman*, 407 U.S. at 15.

The purpose of section 337, as a trade statute, is to regulate international commerce. *Suprema v. U.S. Int'l Trade Comm'n*, 796 F.3d 1338, 1344 (Fed. Cir. 2015) (citing Tariff Act of 1922, ch. 356, § 316(a), Pub.L. No. 67–318, 42 Stat. 858 (1922)). Under section 337, the Commission affords trade relief to domestic industries from a range of unfair trade practices. *Id.* It does this by stopping at the border the entry of goods that are involved in unfair trade practices. *Id.* at 1345. In determining whether to exclude goods from importation, the Commission considers the "public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers." 19 U.S.C. § 1337(d)(1).

███████████████████████████████████

There is a strong public policy in favor of enforcing section 337, as "Congress has been vigilant both to encourage and protect U.S. domestic interests in connection with unfair commercial activity involving foreign imports." *Suprema*, 796 F.3d at 1344. 3Shape has not shown that any other court, and specifically a court in Denmark, can satisfy this congressionally-mandated policy by adjudicating alleged violations of section 337. Enforcing the forum selection clause in the Scanner Agreement and terminating the investigation, therefore, would contravene this strong public policy of the ITC.

Appellate courts have refused to enforce forum selection clauses based on similar public policy reasons. The Ninth Circuit, for example, held that a forum selection clause designating the "courts of Virginia" was unenforceable as to California resident plaintiffs in a class action, as transfer would violate California's "strong public policy" to "protect consumers against unfair and deceptive business practices" by "forcing such plaintiffs to waive their rights to a class action and remedies under California consumer law." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1078, 1084 (9th Cir. 2009). The Tenth Circuit held a forum selection clause designating Texas state court and law be used was "void and unenforceable" because the Miller Act, which formed the basis of the complaint, granted federal courts exclusive jurisdiction over Miller Act disputes. *U.S. for Use of B & D Mechanical Contractors, Inc. v. St. Paul Mercury Ins. Co.*, 70 F.3d 1115, 1119 (10th Cir. 1995).

District courts have acted in accord. In *Tokio Marine & Fire Ins. Co. v. M/V TURQUOISE*, the court held the forum selection clause unenforceable in an *in rem* proceeding because the contracted-for forum, the courts of Korea, did not provide for an *in rem* action. No. C/A 2:00-0379-18, 2001 WL 939826, at *3 (D.S.C. Apr. 24, 2001) (interpreting the Carriage of Goods by Sea Act, which provided that "[a]ny clause, covenant, or agreement in a contract of

8

carriage relieving the carrier or ship from liability for loss or damage to or in connection with the goods, . . . or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect"). In *E & J Gallo Winery v. Morand Bros. Beverage Co.*, the court held that a forum selection clause designating California courts was unenforceable as "the Illinois Beer Act embodies Illinois' strong public policy in favor of having these issues litigated within its borders." 247 F. Supp. 2d 973, 977-78 (N.D. Ill. 2002) (interpreting the Illinois Beer Act, which stated that an "affected party may maintain a civil suit in court if the cause of action directly relates to or stems from the relationship of the individual parties under the agreement, provided that any such suit shall be filed in a State or federal court of competent jurisdiction located in Illinois"). In *Thomas v. Rehabilitation Services of Columbus, Inc.*, the court held the forum selection clause unenforceable because the public policy behind the Civil Rights Act "permits an aggrieved party to bring her Title VII action in the forum in which the alleged discriminatory acts occurred." 45 F. Supp. 2d 1375, 1381 (M.D. Ga. 1999).

While the federal cases above are not binding in this investigation, and I do not rely on them for my holding, they are helpful to understand how other courts have weighed important public policy concerns when determining whether to enforce forum selection clauses. Like the considerations in those cases, section 337 protects domestic industry against unfair practices in import trade and provides complainant with the unique remedy of an exclusion order (*cf. Doe 1*), section 337 permits an aggrieved party to allege a violation of the statute in a complaint to the ITC (*cf. Thomas*), section 337 complaints may only be filed in the ITC (*cf. E & J Gallo Winery*), only the ITC has jurisdiction to enforce section 337 (*cf. St. Paul Mercury*), and there is no indication that courts of Denmark have *in rem* jurisdiction over the accused imported articles (*cf.*

*Tokio Marine & Fire Ins.*). The factors considered by these courts support my decision that the forum selection clause in question is an insufficient basis to terminate this investigation.

My decision does not leave 3Shape without recourse to enforce the forum selection clause, if its claim is meritorious. Nor does it "allow the respondent to repudiate its solemn promise" or "reflect a 'parochial concept that all disputes must be resolved under our laws and in our courts.'" *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (quoting *Bremen*, 407 U.S. at 9). As numerous respondents have done previously, 3Shape may ask a district court to enjoin Align from breaching the forum selection clause and order Align to withdraw its complaint in the ITC, if 3Shape satisfies the federal action requirements. *See General Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011); *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1331-32 (Fed. Cir. 2000) (noting that the court "cannot enjoin the ITC action," but that it can enjoin the patent owner from participating in the ITC proceedings against the respondent); *cf. Dodocase VR, Inc. v. MerchSource, LLC*, No. 17-cv-7088-EDL, 2018 WL 1475289, at *14 (N.D. Cal. Mar. 26, 2018) (issuing a preliminary injunction and ordering the defendant to withdraw its petition at the Patent Trial and Appeal Board based on a forum selection clause between the parties). The Commission has often granted motions to terminate when the complainant withdraws its complaint prior to a hearing, absent extraordinary circumstances. *See* A. Sourcie, R. Prey, and J. Hutchins, UNFAIR COMPETITION AND THE ITC: A TREATISE ON SECTION 337 ACTIONS § 4.61 (2016-2017 ed.) (citing cases). In contrast, 3Shape's motion here is not based on Align's supposed breach of the forum selection clause. It is instead a request that the Commission exercise its discretionary authority under section 337(c) to terminate the investigation based on a private agreement between Align and 3Shape Trios A/S.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

As discussed above, I decline to exercise such discretion in favor of the strong public policy of the Commission in investigating alleged violations of section 337.

My decision also does not extend to differently-worded clauses, such as arbitration clauses. Although arbitration and forum selection clauses are analogous in some respects, *see Scherk*, 417 U.S. at 519, Congress enacted the Federal Arbitration Act ("FAA") to specifically deem arbitration clauses "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see AT&T Mobility LLC v. Concepcion*, 533 U.S. 333, 355 (2011) (Thomas, J., concurring) ("Contract defenses unrelated to the making of the agreement—such as public policy—could not be the basis for declining to enforce an arbitration clause."). The FAA preempts state law, requires courts to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement," and requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement (assuming that the "making of the arbitration agreement or the failure . . . to perform the same" is not at issue). *AT&T Mobility*, 533 U.S. at 344 (quoting 9 U.S.C. §§ 3, 4); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533-34 (2012) (citations omitted). This act of Congress embodies a "national policy favoring arbitration" and "a liberal federal policy favoring arbitration agreements." *AT&T Mobility*, 533 U.S. 346; *see id.* at 345 (noting arbitration agreements afford "parties discretion in designing arbitration processes . . . to allow for efficient, streamlined procedures tailored to the type of dispute").

Similarly, Congress amended section 337 in 1994 to bring "Commission practice into closer conformity with district court rules and practice with respect to" "the deference accorded

11

███████████████

to arbitration agreements." H.R. Rep. No. 103-826(I), 1994 WL 54872, at *142 (Oct. 3, 1994); S. Rep. No. 103-412, 1994 WL 687802, at *121 (Nov. 22, 1994).

The express legislative pronouncements about arbitration noted above invoke different considerations than the dominant factors at work here. Congress has not enacted a preemptory statute for forum selection clauses, nor has it amended section 337 to expressly address forum selection clauses. Additionally, arbitration clauses may conserve public resources, while forum selection clauses merely shift costs from one public forum to another. For at least these reasons, analysis of arbitration clauses may well result in different outcomes.

### IV. Conclusion

For the reasons set forth above, 3Shape's motion (1091-010) to terminate this investigation is hereby denied. 3Shape's motion for summary determination (1091-010) asks me to hold that the forum selection clause in the Scanner Agreement covers the parties and disputes in this investigation. The relief that 3Shape seeks through its summary determination motion is the same as its motion to terminate, namely, termination of this investigation. I have determined not to grant that relief for the reasons stated above. The motion for summary determination is therefore also denied.

Align's expedited motion (1091-012) for an extension of time to respond to 3Shape's motion is hereby denied. 3Shape's unopposed motion for leave to file a reply (1091-015) and Align's unopposed motion for leave to file a sur-reply (1091-018) are both hereby denied.

Within seven days of the date of this document, each party shall email to Cheney337@usitc.gov a statement as to whether or not it seeks to have any portion of this document redacted from the public version. Any party seeking to have any portion of this document redacted from the public version thereof shall also email a copy of this document with red brackets indicating any portion asserted to contain confidential business information. The

████████████████████████████████

parties' submissions concerning the public version of this document need not be filed with the Commission Secretary.

**SO ORDERED.**

_Clark S. Cheney_
Clark S. Cheney
Administrative Law Judge

| | |
|---|---|
| **CERTAIN COLOR INTRAORAL SCANNERS AND RELATED HARDWARE AND SOFTWARE** | Inv. No. 337-TA-1091 |

## CONFIDENTIAL CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **ORDER NO. 23** has been served by hand upon the following parties as indicated, on **May 18, 2018**

*/s/ Lisa R. Barton*

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC 20436

**On Behalf of Complainant Align Technology, Inc.:**

Blair M. Jacobs, Esq.
**PAUL HASTINGS LLP**
875 15th Street, N.W.
Washington, DC 20005

☐ Via Hand Delivery
☑ Via Express Delivery
☐ Via First Class Mail
☐ Other: _____

**On Behalf of Respondents 3Shape A/S and 3Shape, Inc.:**

Goutam Patnaik, Esq.
**PEPPER HAMILTON LLP**
Hamilton Square
600 14th Street, NW
Washington, DC 20005

☐ Via Hand Delivery
☑ Via Express Delivery
☐ Via First Class Mail
☐ Other: _____