IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | **Redacted:** |
| | ) | **Public Version** |
| v. | ) | C.A. No. 18-1949-LPS |
| | ) | |
| | ) | ███████████ |
| 3SHAPE A/S, 3SHAPE TRIOS A/S, | ) | |
| 3SHAPE INC., and 3SHAPE | ) | |
| MANUFACTURING US, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## LETTER TO THE HONORABLE JENNIFER L. HALL FROM JEFF CASTELLANO

OF COUNSEL:
Blair M. Jacobs
Christina A. Ondrick
Elizabeth Bernard
John S. Holley
Mark Consilvio
Allan M. Soobert
James V. Razick
PAUL HASTINGS LLP
M Street NW
Washington, DC 20036
(202) 551-1700

Thomas A. Counts
Grant Margeson
PAUL HASTINGS LLP
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
(415) 856-7000

Dated: November 13, 2020

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
jcastellano@shawkeller.com
*Attorneys for Plaintiff*



Jeff Castellano
I.M. Pei Building
1105 North Market St., 12th Floor
Wilmington, DE 19801
(302) 298-0703
jcastellano@shawkeller.com

November 13, 2020

**Redacted:
Public Version**



**BY CM/ECF**
The Honorable Jennifer L. Hall
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

    Re:    *Align Technology, Inc. v. 3Shape A/S, et al.*, 18-1949-LPS (D. Del.)

Dear Judge Hall:

    Pursuant to the Court's November 10, 2020 Oral Order (D.I. 166), Plaintiff Align Technology, Inc. ("Align") respectfully requests that the Court resolve a dispute with Defendants ("3Shape") regarding email discovery.  In addition, third party Mr. Mike Walsh and Align respectfully request the Court enter a protective order limiting 3Shape to one deposition of Mr. Walsh in the remaining pending matters and precluding questioning on irrelevant issues.

**I.    The Scope of Email Discovery Should Be the Same as Other Actions**

    In C.A. Nos. 17-1646, 17-1647, and 18-886, Align and 3Shape agreed to limit email searching to four custodians, four search terms per custodian, and a limit of 10,000 hits per custodian before the documents must be collected.[1]  3Shape now refuses this discovery.  (Ex. A.)

    3Shape argues that, given cross-use of discovery, it would be overly burdensome to provide the same amount of email discovery in this action as other actions.  (Ex. B.)  That argument fails.  Cross-use is for the convenience of the parties and to minimize burden, but cross-use does not absolve 3Shape of its discovery obligations.  In fact, 3Shape took full advantage of the parties' compromise in the 886 Action as plaintiff.[2]  Given the unique patents, technology, and issues in this case, the parties' prior compromise continues to represent a reasonable and limited scope of email discovery.  In fact, the compromise email protocol previously employed and now challenged by 3Shape is more limited than the discovery contemplated by Paragraph 5(b) of this District's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI").  The parties' email search protocol is reasonable and proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b).

    3Shape also argues burden based on hit limits and reviewing documents for production. (Ex. B.)  Neither supports deviating from the parties' existing compromise protocol.  First, a lower hit limit will likely increase the back-and-forth over search terms to bring total hits under

---

[1]  In C.A. No. 17-1648-LPS, the parties agreed to a more limited email protocol because the parties had already conducted email discovery for those identical patents in an ITC investigation.
[2]  Align further notes it has produced twice many documents as 3Shape under the email protocol.

the limit.  Second, contrary to 3Shape's assertions (*id.* at 2), the parties do not need to review responsive emails that were already produced in prior cases.  (Ex. C (3Shape stating same in the 886 action).)  Finally, four custodians is an appropriate compromise for the scope of this case and 10,000 hits are appropriate because there is no deduplication among search terms or custodians (and benefits of cross-use are applied after the search terms are under the hit limit).  There is no undue burden on 3Shape to applying the same protocol used in the prior cases.[3]

## II.    The Court Should Enter a Protective Order Limiting Mr. Walsh's Deposition

**Align's Streamlining of the Case:**  In an effort to economize the Court's and the parties' resources and consistent with the parties' and the Court's communications on case narrowing efforts,[4] Align seeks to dismiss without prejudice two patents from the above-captioned action, including one patent that is related to the patents asserted in the 1646 action and one patent that has overlapping subject matter with the 1647 action.  (Ex. D.)  Consistent with the parties' past practice when 3Shape sought to drop a patent in the 886 action, Align has notified 3Shape that it will not provide discovery on those patents and issues pending their dismissal.  (*Id.*)  While 3Shape previously requested that Align streamline the issues in dispute, pointing to overlapping technology between these patents and actions (*e.g.,* 1646 Action, D.I. 501 at 3), 3Shape now will not stipulate to a dismissal without prejudice and instead insists on a dismissal with prejudice and further restrictions.  (Ex. D.)  As a result, Align will file a motion seeking approval of the contemplated narrowing without prejudice.

**The Dispute:**  3Shape improperly seeks deposition discovery from Mr. Walsh on subject matter related to these patents, including subject matter related to the 1646 action that the Court has twice previously precluded.  (D.I. 114 at 65:22-66:22; 1647 Action, D.I. 236.)[5]  3Shape failed to depose Mr. Walsh in the 1646 action, and has now tried multiple times to remedy that failure by deposing him in other actions.  This is now its third attempt, but discovery is long closed in the 1646 action and with Align's proposed dismissal of the related patents, there is no basis for further discovery other than to circumvent this Court's prior orders.  (*Id.*)  3Shape also refuses to combine Mr. Walsh's depositions in the 1949 and 1648 actions, taking the position that it is necessary to depose Mr. Walsh four times (3Shape has already deposed him twice).

**The Court Should Limit Mr. Walsh's Deposition:**  Mr. Walsh is a third party who is establishing a new consulting business.  (Walsh Decl., ¶¶ 2-7.)  3Shape subpoenaed Mr. Walsh for a deposition on November 10, 2020.  (Ex. E.)  While Mr. Walsh requested his deposition take place after November 10 (but before the February 12, 2021 fact discovery deadline), he ultimately made 3Shape's noticed date workable (Walsh Decl., ¶ 4).  Align notified 3Shape during this time of its intent to streamline the 1949 action and counsel also became aware that 3Shape might seek a fourth deposition of Mr. Walsh in the immediate future.  Mr. Walsh then asked to be deposed only one time in the 1949 and 1648 actions, and that he not be deposed on irrelevant subject matter (Ex. F).  On the night two days prior to Mr. Walsh's deposition, 3Shape

---

[3]  While 3Shape complains that Align has not made a "compromise proposal" (Ex. B at 2), such an argument ignores that Align's proposal was the parties' existing compromise.
[4]  The Scheduling Order contemplates narrowing of asserted claims.  (D.I. 54 ¶ 7(g).)
[5]  Although Mr. Walsh lacks knowledge, 3Shape cannot pursue discovery on counterclaims subject to Align's motion to dismiss.  *Barak v. Zeff*, 289 F. App'x 907, 915-16 (6th Cir. 2008).

refused Mr. Walsh's requests.  (*Id.*)  The next day, 3Shape refused to commit to whether or not it would serve another subpoena on Mr. Walsh in the 1648 case, and refused to take the November 10 deposition only on relevant issues (i.e, issues related to the scanner patents, and *not* issues related to the two software patents Align will move to dismiss).  (*Id.*)  Given this refusal, Mr. Walsh notified 3Shape that he would move for a protective order and invoked Local Rule 30.2.  (*Id.*)  3Shape nonetheless insisted on conducting the deposition to make a statement, but never provided authority supporting its position that Local Rule 30.2 did not apply.  (*Id.*; Ex. G.)

*Mr. Walsh's Motion Is Proper*:  Mr. Walsh's November 9 motion is before the compliance date and is, thus, timely.  *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, No. 09-126-SLR, 2010 WL 181088, at *2-3 (D. Del. Jan. 19, 2010).  Filing a motion for a protective order in Delaware ("where the action is pending") is proper under Fed. R. Civ. P. 26(c).  *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 246 (4th Cir. 2009); *Pennsylvania v. Think Fin., LLC*, No. 14-CV-7139, 2018 WL 4635750, at *7 (E.D. Pa. Sept. 26, 2018).

*The Court Should Enter A Protective Order:*  This is the third time in the past year that 3Shape has attempted to take discovery from Mr. Walsh outside the scope of the case for which his deposition is noticed.  The Court has already instructed 3Shape to limit its questioning to "issues relevant to the case for which [Mr. Walsh] is being deposed." (*See* D.I. 114 at 66:3-10.) The Court should enter an order protecting Mr. Walsh from undue burden by specifying that 3Shape may only depose Mr. Walsh on the relevant issues and limit 3Shape to one combined deposition in this and the 1648 action.  *See* Fed. R. Civ. P. 26(c).  No questioning should be allowed on issues relevant only to other cases and other patents, counterclaims and defenses where the fact discovery deadline has long passed.

Despite Mr. Walsh's reasonable request—as a third party—to limit his deposition, 3Shape seeks to unduly burden Mr. Walsh with questioning on irrelevant issues.  This attempt is unsupported and unreasonable based on the following:
- Align's dismissal of two patents follows the same practice 3Shape employed when dropping a patent and ceasing any further discovery thereon in the 886 case.  (Exs. D, H.)
- There is no reason why 3Shape must depose Mr. Walsh on issues being dropped.  (Ex. F.)
- There is time before the discovery deadline to resolve issues before the deposition.
- 3Shape ignored Mr. Walsh's request to use his prior deposition transcript from the 886 action to limit the time and scope of the deposition in this action.  (*See id.*)
- Mr. Walsh has already been deposed twice by 3Shape in the past year.  (Walsh Decl. ¶ 1.)
- Mr. Walsh asked 3Shape for one deposition in the 1949 and 1648 actions, but 3Shape refused the request or to forego a subsequent subpoena for the 1648 action despite the fact that the discovery periods end within one month of each other.  (*Id.* ¶¶ 5, 7; Ex. F.)

In sum, 3Shape identifies no argument or authority mandating that Mr. Walsh should be unduly burdened with multiple depositions related to issues not in dispute.  In contrast, there is good cause to limit the deposition under Fed. R. Civ. P. 26(c).  *See Kyowa Hakko Bio, Co., Ltd. v. Ajinomoto Co., Ltd.*, No. 17-cv-00313-MSG, 2019 WL 10092522, at *2 (D. Del. Apr. 1, 2019).  The Court should, therefore, enter a protective order limiting Mr. Walsh's deposition to one deposition in the 1949 and 1648 actions and limiting such deposition to the claims, issues, and defenses in those actions for which Align will not request dismissal and, if appropriate, postpone any such deposition until the Court rules on Align's request.

Respectfully submitted,

*/s/ Jeff Castellano*

Jeff Castellano (No. 4837)

cc:     Clerk of the Court (by CM/ECF)
        All counsel of record (by CM/ECF)

# Exhibit A

**From:** Margeson, Grant N.
**To:** Petrik, Brittanee L; 3Shape_1949_Pepper
**Cc:** DE-Align-1949; SKAlignTechnology@shawkeller.com
**Subject:** RE: Activity in Case 1:18-cv-01949-LPS Align Technology, Inc. v. 3Shape A/S et al Order Setting Teleconference
**Date:** Wednesday, November 11, 2020 12:46:20 PM
**Attachments:** image001.png

Hi Brittanee,

Thank you for your prompt response.  We are disappointed by 3Shape's response.  Given that it is 3Shape who seeks to limit discovery and deviate from the parties' prior compromise, it seemed that 3Shape would want to move for a protective order.  Align will ask the Court to resolve the parties' dispute given 3Shape's decision not do so and attach this correspondence.

Perhaps this is unnecessary, but just to clarify so there is no misunderstanding (given the use of "pressed" and "unilaterally" below):  Align and 3Shape met and conferred on this issue several times and 3Shape's counsel represented and agreed that the parties were at an impasse, so Align properly invoked the discovery dispute process according to the Scheduling Order.

Best,

Grant

---

PAUL
HASTINGS

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct:
+1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 |
grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Petrik, Brittanee L. <Brittanee.Petrik@Troutman.com>
**Sent:** Wednesday, November 11, 2020 12:14 PM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Subject:** [EXT] RE: Activity in Case 1:18-cv-01949-LPS Align Technology, Inc. v. 3Shape A/S et al Order Setting Teleconference

Hi Grant,

We disagree.  Align is the party that raised this dispute and pressed to submit the issue to the Court for resolution.  Align also unilaterally filed the motion.  Therefore, Align is the movant.

Thanks,

Brittanee

**Brittanee L. Petrik**
Associate
troutman pepper
Direct: 617.204.5179 | Internal: 815-5179
brittanee.petrik@troutman.com

**From:** Margeson, Grant N. [mailto:grantmargeson@paulhastings.com]
**Sent:** Wednesday, November 11, 2020 2:42 PM
**To:** 3Shape_1949_Pepper
**Cc:** DE-Align-1949; SKAlignTechnology@shawkeller.com
**Subject:** FW: Activity in Case 1:18-cv-01949-LPS Align Technology, Inc. v. 3Shape A/S et al Order Setting Teleconference

**EXTERNAL SENDER**

Counsel,

We write to clarify which party will be the movant on email discovery.  Because 3Shape seeks to deviate from both this District's

default and the parties' past practice, Align believes that 3Shape should be the movant.  Please let us know if you disagree, as the parties did not cover this on the meet and confer.

We confirm that Mr. Walsh and Align will be the movants seeking a protective order related to Mr. Walsh's deposition.

Thanks,

Grant

---

## PAUL HASTINGS

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

**From:** ded_nefreply@ded.uscourts.gov <ded_nefreply@ded.uscourts.gov>
**Sent:** Tuesday, November 10, 2020 11:35 AM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** [EXT] Activity in Case 1:18-cv-01949-LPS Align Technology, Inc. v. 3Shape A/S et al Order Setting Teleconference

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### District of Delaware

### Notice of Electronic Filing

The following transaction was entered on 11/10/2020 at 2:35 PM EST and filed on 11/10/2020
**Case Name:**     Align Technology, Inc. v. 3Shape A/S et al
**Case Number:**   1:18-cv-01949-LPS
**Filer:**
**Document Number:** 166(No document attached)

**Docket Text:**
ORAL ORDER Setting Teleconference: The Court has reviewed Plaintiff's Motion for Teleconference to Resolve Discovery Disputes (D.I. [165]). A discovery dispute teleconference is scheduled for November 19, 2020 at 2:00 PM Eastern Time before Judge Jennifer L. Hall. By no later than November 13, 2020 the party(ies) seeking relief shall file with the Court a letter, not to exceed three pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues. By no later than November 17, 2020, any party(ies) opposing the application for relief may file a letter, not to exceed three pages, in no less than 12-point font, outlining that party's reasons for its opposition. Counsel shall send dial-in information directly to the Court, no later than 24 hours prior to the hearing, using the following e-mail address: Cailah_Garfinkel@ded.uscourts.gov. The Court may choose to resolve the dispute prior to the telephone conference and will, in that event, cancel the conference. ORDERED by Judge Jennifer L. Hall on 11/10/2020. (ceg)

**1:18-cv-01949-LPS Notice has been electronically mailed to:**

John W. Shaw     jshaw@shawkeller.com, cal@shawkeller.com

Karen Elizabeth Keller     kkeller@shawkeller.com, cal@shawkeller.com

Goutam Patnaik    goutam.patnaik@troutman.com, nora.luersen@troutman.com

Blair M. Jacobs    blairjacobs@paulhastings.com, Delaware-ECF@paulhastings.com

Christina A. Ondrick    christinaondrick@paulhastings.com, johnholley@paulhastings.com

Jeffrey Thomas Castellano    jcastellano@shawkeller.com, cal@shawkeller.com

James Harry Stone Levine    james.levine@troutman.com, kristin.wright@troutman.com

William D. Belanger    william.belanger@troutman.com

Tuhin Ganguly    tuhin.ganguly@troutman.com

Alison L. McCarthy    alison.mccarthy@troutman.com

Thomas A. Counts    tomcounts@paulhastings.com

Allan M. Soobert    allansoobert@paulhastings.com

S. Lloyd Smith    lloyd.smith@bipc.com, florence.goodman@bipc.com

David J. Shaw    david.shaw@troutman.com

Kimberly E. Coghill    coghillk@pepperlaw.com

John S. Holley    johnholley@paulhastings.com

Mark J. Consilvio    markconsilvio@paulhastings.com

Grant N. Margeson    grantmargeson@paulhastings.com

Elizabeth Bernard    elizabethbernard@paulhastings.com

Bryan J. Cannon    cannonb@pepperlaw.com

**1:18-cv-01949-LPS Filer will deliver document by other means to:**

---

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

# Exhibit B

| | |
|---|---|
| **From:** | Margeson, Grant N. |
| **To:** | Shaw, David J.; 3Shape_1949_Pepper |
| **Cc:** | DE-Align-1949; SKAlignTechnology@shawkeller.com |
| **Subject:** | RE: Align v. 3Shape (1949) - Email Discovery |
| **Date:** | Friday, November 6, 2020 7:58:09 AM |
| **Attachments:** | image001.png |

David,

To clarify the record: My email below came approximately one hour after Brittanee again reiterated in a separate thread that 3Shape was available Friday morning at 10:30 am. *See* 11/5/20 Petrik Email at 4:58 PM Eastern ("We are available to meet and confer on these issues on Thursday 9 am – 3:30 pm ET or Friday 9 – 11 am and 12 – 3 pm ET."). This is now the second time we have accepted 3Shape's offered time to meet and confer on email discovery and 3Shape has subsequently revoked its offer.

Please circulate a dial-in for Monday at 11 am Eastern.

Thanks,

Grant

---

## PAUL HASTINGS

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Shaw, David J. <David.Shaw@Troutman.com>
**Sent:** Thursday, November 5, 2020 4:01 PM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Email Discovery

Hi Grant,

The parties' positions are fully explained in this thread and our prior discussions in April regarding the protective order, so there's no need for further reiteration. We clearly disagree. By the time you sent your email below we had already made competing commitments, so we are no longer free tomorrow morning. We're happy to discuss email production when we continue the discovery meet and confer early next week. We can discuss that and any other issues that are near impasse first, so that local counsel can drop off before the parties discuss other issues that are less developed between us – I think that is a good way to accommodate local counsel without forcing the rest of us to join multiple calls where one is sufficient. I understand Brittanee is going to propose some times early next week that work for us in her next email.

Thanks,
David

**David J. Shaw**
Direct: 202.220.1259 | Internal: 803-1259
david.shaw@troutman.com

**troutman** pepper
2000 K Street, N.W., Suite 600
Washington, DC  20006-1865
troutman.com

---

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Wednesday, November 4, 2020 6:09 PM
**To:** Shaw, David J. <David.Shaw@Troutman.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Subject:** RE: Align v. 3Shape (1949) - Email Discovery

**EXTERNAL SENDER**

Hi David,

First, we will not respond on the accusations and characterizations—with which we disagree—in an attempt to focus the parties on the merits of the dispute.

Second, we merely asked of 3Shape what it has asked from us in other discovery disputes. We understand your point on subjectivity, and expect 3Shape will proceed with the same understanding of Align's positions when the tables are turned. On the topic of holding 3Shape to its standard articulated in other discovery disputes, can you please provide the proof for your position below that 3Shape is "reviewing email search hits that have already been produced"? By our count of the document production, Align has produced double the amount of emails (plus family) as 3Shape. Thus, Align's proposal to continue with the existing compromise appears to be actually *less* burdensome on 3Shape than it is on Align.

Third, while it is true 3Shape made a restrictive proposal disproportionate to the needs of the case, 3Shape ignores that Align has already made the compromise proposal—the exact same compromise that the parties have repeatedly reached. The fact that 3Shape has now unilaterally demanded that the parties renegotiate their prior agreement does not mean that Align has not negotiated in good faith (Align has). If 3Shape would like to make a best offer and a proposal that is actually tethered to the parties' discovery needs, Align willing to consider the proposal. We can hopefully reach a resolution on the meet and confer.

Fourth, as Ms. Chang noted, Align would like time to evaluate 3Shape's response on other discovery issues prior to the meet and confer. 3Shape just now provided that information, which we are evaluating and will respond to, but it appears we need additional information from 3Shape at first blush and it does not appear that the parties are near an impasse yet. Thus, it does not make sense to hold off on email discovery—a separate and discrete issue that is ripe for resolution. Moreover, given that the parties are still negotiating the other discovery issues, it seems inefficient to make lead and local participate in a longer call when we can efficiently tee up email discovery for the Court. Align is available to meet and confer on email discovery at 10:30 am Eastern on Friday. Please circulate a dial in if that time still works.

Thanks,

Grant

---

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Shaw, David J. <David.Shaw@Troutman.com>
**Sent:** Wednesday, November 4, 2020 4:31 AM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Email Discovery

Hi Grant,

Whether or not we have provided a "compelling argument" is subjective, and of course we believe that we have. On the matter of hit counts, I have explained many times that higher hit counts require more extensive attorney review, which increases burdens in terms of both cost and time. This issue is particularly acute at this stage of Align's litigation campaign given the large number of repeat hits captured by Align's more recent email searches – 3Shape is expending inordinate time and money reviewing email search hits that have already been produced in one of the five prior Align-initiated cases where the parties have undertaken email discovery. 3Shape made the last proposal regarding numbers of custodians, search terms, and hit counts, so if you would like to negotiate in good faith by making a compromise proposal, we are happy to consider it.

Practically, we are no longer free at noon today because we scheduled another call after I sent my last email below. We also think it is inefficient for the parties to hold multiple meet and confers rather than one call regarding all 1949 outstanding discovery issues,

particularly given everything else that is going on in the cases.  Linda and Brittanee already agreed to an exchange regarding RFPs today and a follow up meet and confer on Thursday or Friday of this week.  We can discuss email discovery again on that call if necessary.

Finally, regarding submission of disputes to the Court, Align repeatedly requested to consolidate disputes in order to minimize discovery submissions to the Court in the 886 case and we think that makes sense here too, particularly given that we are likely to reach other impasses during the discovery meet and confer this week.

Talk to you on Thursday or Friday – let us know when your team is free.

Best,
David

**David J. Shaw**
Direct: 202.220.1259 | Internal: 803-1259
david.shaw@troutman.com

**troutman** pepper
2000 K Street, N.W., Suite 600
Washington, DC  20006-1865
troutman.com

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Tuesday, November 3, 2020 3:16 PM
**To:** Shaw, David J. <David.Shaw@Troutman.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Subject:** RE: Align v. 3Shape (1949) - Email Discovery

**EXTERNAL SENDER**

David,

We have not put words in your mouth, but we can agree to disagree and move on.  Turning to the substance of the dispute, 3Shape has provided no compelling argument for deviating from four custodians and 10,000 hits/custodian for this case.  We further note 3Shape has offered no concrete reason for why it would be less burdensome to lower a cap on the number of hits, given that it appears 3Shape's primary complaint is meeting a document number cap.  And, while 3Shape raises the specter of "disproportionately burdensome" below, 3Shape has not provided any proof that email discovery is either disproportionate or burdensome.  To the extent that 3Shape has such concrete reasons or proof, please provide them in advance of the meet and confer.

We believe this issue is ripe to submit to the Court for resolution, unlike the other discovery disputes, and would thus prefer to have a short meet and confer on this issue alone on Wednesday at noon Eastern.  Please circulate a dial-in if that time still works for 3Shape.

Thanks,

Grant

**PAUL HASTINGS**

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct:
+1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 |
grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Shaw, David J. <David.Shaw@Troutman.com>
**Sent:** Tuesday, November 3, 2020 5:34 AM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Email Discovery

Grant,

Again, you are trying to put words in my mouth and assuming things about conversations in which neither you nor anyone else from your firm was involved.  Your assumptions are not correct.  To the extent there was a misunderstanding, it was only between Align's counsel.  It is not my job to coordinate between the four different firms representing Align in these cases.  I was very clear with Mr. Taylor just as I was very clear with you – 4 custodians and 10,000 hits is disproportionately burdensome in both the 1648 and 1949 cases.

We are free to meet and confer about this and the other outstanding discovery issues this week as follows:
- Wednesday – 9am-2pm ET
- Thursday – 9am-3:30pm ET
- Friday – 9am-3pm ET

Best,
David

**David J. Shaw**
Direct: 202.220.1259 | Internal: 803-1259
david.shaw@troutman.com

**troutman** pepper
2000 K Street, N.W., Suite 600
Washington, DC  20006-1865
troutman.com

---

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Friday, October 30, 2020 5:04 PM
**To:** Shaw, David J. <David.Shaw@Troutman.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Subject:** RE: Align v. 3Shape (1949) - Email Discovery

**EXTERNAL SENDER**

David,

At best, 3Shape now contends there was a misunderstanding between it and Bartlit Beck.  It was clear in the July 17, 2020, email from Mr. Taylor that Align "propose[d] that the parties have the same limit in 1648 that we **have agreed** in other cases, **including 1949**," to which you notably responded without stating otherwise.  (emphasis added).  But there is no need for further discussion on this point, as 1648 is distinguishable from 1949 for the additional reasons raised below.  And, regardless, the unique claims in the 1949 case merit at least the discovery contemplated by the 4 custodians and 10,000 hit/custodian limit compromise to which the parties have repeatedly agreed.

We will keep an eye out for proposed meet and confer times next week.

Thanks,

Grant

---

**PAUL HASTINGS**

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

---

**From:** Shaw, David J. <David.Shaw@Troutman.com>
**Sent:** Thursday, October 29, 2020 5:04 PM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Email Discovery

Grant,

First, please tell me exactly where and how, in that email thread or anywhere else, that you claim we "led [y]our co-counsel to believe that there had *already* been an agreement to 4 custodians and 10,000 hits in the 1949 action." You were not involved in those discussions and you are making a very serious accusation with no firsthand knowledge. I was personally involved in those conversations with Dan Taylor. I invite Dan to join our meet and confer and I am happy to hear him out if he believes I misled him at all. But he will not say that, because nothing of the sort happened.

Second, 3Shape has been a plaintiff once. The 1949 case is at least the sixth case between the parties where Align is plaintiff/complainant and the same 3Shape products that have been accused in multiple prior cases are accused again in 1949. Align has already discovered tens of thousands of 3Shape emails in those cases, in what has only become a more and more cumbersome and repetitive process over time. So as we have repeatedly explained, 4 custodians and 10,000 hits is disproportionately burdensome and repetitive.

I am out of the office tomorrow, but I will speak to our local counsel and get you some times to meet and confer next week. In the meantime, please respond in writing to my first paragraph above at your earliest convenience.

Best,
David

---
Sent from Workspace ONE Boxer

On October 29, 2020 at 17:56:27 EDT, Margeson, Grant N. <grantmargeson@paulhastings.com> wrote:

**EXTERNAL SENDER**

David,

We have considered 3Shape's counterproposal on email discovery and its actions in the 1648 case, as well as 3Shape's positions expressed on the meet and confer about streamlining the back-and-forth over narrowing search terms. Based on that, we see no reason to deviate from the parties' prior agreed-upon protocol.

First, we understand that 3Shape led our co-counsel to believe that there had *already* been an agreement to 4 custodians and 10,000 hits in the 1949 action and that the understanding was, in part, why an agreement to a reduced number of hits per custodian was reached (see attached email correspondence). Of course, another consideration was that 1090 discovery on the asserted patents had already occurred. Thus, the more limited email search protocol in the 1648 action is inapplicable here.

Second, the parties have agreed in *every* Delaware action without a corresponding ITC action that email discovery should be limited to four custodians and four search terms with 10,000 hits per custodian. Align sees no reason to deviate from that compromise now, particularly in light of the fact that it was good enough for 3Shape when 3Shape was plaintiff in the 886 case. And the proposed search protocol is still more limited than the default in Delaware, meaning that the compromise of 4 custodians with 10,000 hits is reasonable in light of the claims and defenses at issue in this action.

Please let us know, in light of the above, if 3Shape will agree to an email discovery protocol of four custodian with a limit of 10,000 hits each. If not, please let us know when 3Shape's lead and local counsel is available for a meet and confer so we can put the email discovery dispute before the Court.

Thanks,

Grant

---



**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Tuesday, October 20, 2020 2:46 PM
**To:** Shaw, David J. <David.Shaw@Troutman.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; 'SKAlignTechnology@shawkeller.com'

<SKAlignTechnology@shawkeller.com>
**Subject:** RE: Align v. 3Shape (1949) - Email Discovery

David,

Thanks for the call, and for confirming that 3Shape's designation of its responses to Align's first set of requests for production as "Highly Confidential – Attorneys' Eyes Only" was inadvertent.  We will treat the discovery responses as bearing no confidentiality designation.  I wanted to reiterate what I said on the phone when you complained about having to respond on this issue: It would have been much more efficient and required fewer exchanges if 3Shape had simply responded to Align when we first raised the question about 3Shape's designation.  We appreciate courteous and timely responses in the future.

Thanks,

Grant

PAUL

HASTINGS

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Tuesday, October 20, 2020 1:13 PM
**To:** Shaw, David J. <David.Shaw@Troutman.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; 'SKAlignTechnology@shawkeller.com' <SKAlignTechnology@shawkeller.com>
**Subject:** RE: Align v. 3Shape (1949) - Email Discovery

Hi David,

Apologies for missing your call—I called you back at your office line but you did not answer.  Perhaps we should set up a call that includes our Delaware counsel if 3Shap is unwilling to withdraw or narrow its confidentiality designation, but please feel free to give me a call back at my office number to discuss first if that will help resolve this issue.

As stated in my email yesterday, we are available at 4 pm Eastern on Friday—please circulate a dial-in if that time works for you and your team.

Thanks,

Grant

PAUL

HASTINGS

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Shaw, David J. <David.Shaw@Troutman.com>
**Sent:** Tuesday, October 20, 2020 12:44 PM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Email Discovery

Hi Grant,

Given all the discovery issues raised in the parties' letters, I assume that a meet and confer will last for a long time and

that is why I used the term "protracted."  In any event, please let us know if and when you're available to meet and confer on Friday.  We are more than happy to discuss potential email discovery during that meet and confer, as I've mentioned.

I just tried to call your direct line to address the confidentiality designation, but you did not answer.  I can discuss that issue briefly prior to Friday.

Best,
David

**David J. Shaw**
Direct: 202.220.1259 | Internal: 803-1259
david.shaw@troutman.com

**troutman** pepper
2000 K Street, N.W., Suite 600
Washington, DC  20006-1865
troutman.com

---

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Monday, October 19, 2020 8:34 PM
**To:** Shaw, David J. <David.Shaw@Troutman.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>
**Subject:** RE: Align v. 3Shape (1949) - Email Discovery

**EXTERNAL SENDER**
David,

First, we are unsure why you characterized a proposed meet and confer on email discovery and other issues (including those issues that 3Shape itself has requested the parties meet and confer on) as "protracted," but we are available for a productive meet and confer on Friday at 4 pm Eastern.  And, on the topic of a meet and confer, 3Shape is required to meet and confer within 7 days of the written notice challenging 3Shape's improper designation (D.I. 71 ¶ 6.2).  Therefore, can you please either confirm that 3Shape will withdraw the "Highly Confidential – Attorneys' Eyes Only" designation on its objections and responses to Align's first set of requests for production or provide a time to meet and confer on that issue alone before the end of the 7-day period?

Second, you have now made vague references to April twice.  But, contrary to your intimations, 3Shape represented during the parties' discussions regarding the protective order that 3Shape wanted to "continue to meet and confer about appropriate email discovery limits for this case." (5/5/20 D. Shaw Email.)  There is no need for you to "reiterate" anything the parties have already discussed—especially if you are unwilling to meet and confer in good faith as 3Shape previously promised.  That said, we are hopeful that, despite the tone of your emails, the parties can work collaboratively on this and other issues.  We look forward to a cooperative discussion on the meet and confer.

Thanks,

Grant

---

**PAUL HASTINGS**

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct:
+1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 |
grantmargeson@paulhastings.com | www.paulhastings.com

---

**From:** Shaw, David J. <David.Shaw@Troutman.com>
**Sent:** Monday, October 19, 2020 11:05 AM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; 3Shape_1949_Pepper
<3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Email Discovery

Hi Grant,

We're not available for a protracted discovery meet and confer until Friday.  If you want to let us know when you're free on Friday, we can get something on the calendar.  We explained back in April why your email discovery proposal does not make sense, but we're happy to reiterate and try to compromise.

Best,
David

**David J. Shaw**
Direct: 202.220.1259 | Internal: 803-1259
david.shaw@troutman.com

**troutman** pepper
2000 K Street, N.W., Suite 600
Washington, DC  20006-1865
troutman.com

---

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Friday, October 16, 2020 6:29 PM
**To:** Shaw, David J. <David.Shaw@Troutman.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>
**Subject:** RE: Align v. 3Shape (1949) - Email Discovery

**EXTERNAL SENDER**
David,

We are disappointed that 3Shape refuses to agree to the protocols that the parties have agreed to in the other pending actions—including the action in which 3Shape is plaintiff.  Perhaps we can discuss this issue along with the other pending discovery issues early next week.  Please propose a few times for a meet and confer on Monday or Tuesday.

Thanks,

Grant

---

**PAUL HASTINGS**
**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

---

**From:** Shaw, David J. <David.Shaw@Troutman.com>
**Sent:** Friday, October 16, 2020 8:06 AM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Email Discovery

Hi Grant,

As already discussed, we do not agree, and continue to believe that 4 custodians and 10,000 hits is overbroad, unduly burdensome, and not proportional.  This is particularly true given the large volume of prior email discovery regarding the same products and issues disputed in this case, which is all available via cross-use.  We stand by the proposal we made in April – two (2) custodians, two (2) search terms, and a maximum of 5000 hits per custodian.

Best,
David

**David J. Shaw**
Direct: 202.220.1259 | Internal: 803-1259
david.shaw@troutman.com

**troutman** pepper
2000 K Street, N.W., Suite 600
Washington, DC  20006-1865

troutman.com
_____

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Thursday, October 15, 2020 6:40 PM
**To:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Cc:** DE-Align-1949 <DE-Align-1949@paulhastings.com>
**Subject:** Align v. 3Shape (1949) - Email Discovery

**EXTERNAL SENDER**
Counsel,

The parties need to undertake email discovery in this case.  Align proposes four custodians with five search terms per custodian and a total of 10,000 hits per custodian limit, as the parties have done in the other pending actions.  Please confirm 3Shape agrees, and we will serve our identification of custodians and search terms.

Thanks,

Grant


_____

**PAUL**        **Grant Margeson | Associate, Litigation Department**
**HASTINGS**    Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

*********************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

*********************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

*********************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

*********************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

<RE: D. Del. 1648 Case - Cross-Use Agreement and Protective Order.eml>

*********************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

*********************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name

and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

# Exhibit C

| From: | Holley, John |
|---|---|
| To: | Ellis, Ryan; Sha..., Da..id J. |
| Cc: | Bernard, Elizabeth; DE-Align-0886; 3Shape_886_Pepper; align@bartlitbeck.com |
| Subject: | RE: [EXT] RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: Re: C.A. No. 18-886-LPS - Email discovery |
| Date: | Wednesday, June 10, 2020 8:31:35 AM |
| Attachments: | image001...ng |
| | image005.png |
| | image006.png |
| | image007.png |
| | image002.png |

Hi Ryan

You are correct that the parties have always operated under the understanding that the 886 PO provides cross-use for the productions in the other litigations.

Thank you for confirming that 3Shape will not be re-producing previously produced emails.  Align likewise will not be re-reviewing and re-producing any previously produced email families in the 886 case.  The parties will be taking the same approach to the email production.

Best
John

**From:** Ellis, Ryan <ellisr@pepperlaw.com>
**Sent:** Monday, June 8, 2020 7:41 AM
**To:** Holley, John <johnholley@paulhastings.com>; Shaw, David J. <shawd@pepperlaw.com>
**Cc:** Bernard, Elizabeth <elizabethbernard@paulhastings.com>; DE-Align-0886 <DE-Align-0886@paulhastings.com>; 3Shape_886_Pepper <3Shape_886_Pepper@pepperlaw.com>; align@bartlitbeck.com
**Subject:** [EXT] RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: Re: C.A. No. 18-886-LPS - Email discovery

Hi John

The Protective Order in this case (ECF No. 34) is somewhat vague as to whether documents produced in previous cases may be cross used in the 886 case – this was recently addressed in the context of the 1949 case Protective Order.  Despite the vague language  we understand that the parties have operated under the understanding that productions in the other litigations between the parties (i.e.  the ITC Investigations and other Delaware actions) may be cross used in the 886 case.

We wanted to bring this up because some of the email hits for Align s 886 search terms were already produced in other litigations between the parties.  Where a full email family was previously produced in one of those other litigations  we do not intend to re-review and re-produce that email family again in the 886 case  because those families are already produced and available via cross use.  We believe the inherent time and cost savings are beneficial to both parties.

Please let us know if you have a different understanding or would like to discuss.

Best regards

**Ryan Ellis**
Associate

cid:image001.jpg@01D63F17.60409050

2000 K Street, N.W. | Su te 600
Washington, DC  20006-1865
p: 202.220.1285 | f: 202.318.6346 | bio

Effective July 1  2020  Pepper Hamilton will combine with Troutman Sanders to become Troutman Pepper Hamilton Sanders LLP (Troutman Pepper). On that date  my email address wi l change  while my phone number will remain the same. My former Pepper Hamilton email address will work for a period of time after July 1. The new Troutman Pepper w ll offer expanded capabilities and practice strengths while continuing to deliver powerful solutions to clients' legal and business issues with a hallmark focus on client care.

**From:** Holley, John <johnholley@paulhastings.com>
**Sent:** Friday, June 5, 2020 12:15 PM
**To:** Ellis, Ryan <ellisr@pepperlaw.com>; Shaw, David J. <shawd@pepperlaw.com>
**Cc:** Bernard, Elizabeth <elizabethbernard@paulhastings.com>; DE-Align-0886 <DE-Align-0886@paulhastings.com>; 3Shape_886_Pepper <3Shape_886_Pepper@pepperlaw.com>; align@bartlitbeck.com
**Subject:** [EXTERNAL] RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: RE: Re: C.A. No. 18-886-LPS - Email discovery

Remainder of Email Thread Omitted

# Exhibit D

Redacted In Its Entirety

# Exhibit E

Troutman Pepper Hamilton Sanders LLP
2000 K Street, N.W., Suite 600
Washington, DC 20006-1865



troutman.com

**David J. Shaw**
David.Shaw@troutman.com

September 29, 2020

Mike Walsh
480 Bird Rd.
Mansfield, MA 02048-1692

**Re:**    ***Align Technology, Inc. v. 3Shape A/S, 3Shape Trios A/S, 3Shape, Inc., and 3Shape Manufacturing US, LLC****, C.A. No. 18-1949-LPS (D. Del.)*

Dear Mr. Walsh:

I represent Plaintiff 3Shape A/S, 3Shape Trios A/S, 3Shape, Inc., and 3Shape Manufacturing US, LLC (collectively, "3Shape") in the above-captioned proceeding. Enclosed please find a subpoena requiring your attendance at a deposition.

The subpoena to produce documents requests that you produce any responsive documents and things by November 3, 2020, for inspection and copying at Troutman Pepper Hamilton Sanders, LLP, 125 High Street, 125 High Street #1900, Boston, MA 02110. You may simply deliver copies of any responsive documents to this address. Alternatively, you may send responsive documents by shipping them to me at my office address in the header of this letter, or by secure electronic delivery to david.shaw@troutman.com, or we can set up another online delivery method such as a secure FTP site. Please inform me of your desired delivery method and I will be happy to assist in arranging delivery.

If any of the requested documents contain confidential information, their confidential status will be maintained and dissemination will be restricted in accordance with Section 10 of the enclosed Protective Order entered by the Court.

The subpoena for a deposition requests that you make yourself available to testify on November 10, 2020. If COVID-19 concerns persist at the time of the deposition, the deposition can be conducted remotely by videoconference if you prefer. The required fee for your attendance is included with service of this subpoena.

We will cooperate with you to make this process as efficient and non-disruptive as possible. Please let me know as soon as possible if the scheduled deposition date is inconvenient for you and we can find a mutually acceptable alternative date. Please also do not hesitate to contact me if I can address any questions or concerns you may have. I can be reached by phone (202-220-1259) or email (david.shaw@troutman.com).

**Mike Walsh**
September 29, 2020
Page 2

Sincerely,

*/s/ David J. Shaw*
David J. Shaw

cc: All counsel of record

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Delaware

| | |
|---|---|
| Align Technology, Inc. | ) |
| *Plaintiff* | ) |
| v. | )      Civil Action No.    18-1949-LPS |
| 3Shape A/S, 3Shape Trios A/S, 3Shape, Inc., and 3Shape Manufacturing US, LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                     Mike Walsh
                        480 Bird Rd., Mansfield, MA 02048-1692
                        *(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Remote from witness's place of residence or another agreed upon location | Date and Time: <br> 11/10/2020 9:00 am |
|---|---|

The deposition will be recorded by this method:   audio, audiovisual, and/or stenographic means

❑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   09/29/2020

|  *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/ James H. S. Levine |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   3Shape A/S, 3Shape Trios A/S,  3Shape, Inc., and 3Shape Manufacturing US, LLC   , who issues or requests this subpoena, are:

James H.S. Levine; Troutman Pepper LLP; 1313 North Market Street, Suite 5100, Wilmington, DE 19899; james.levine@troutman.com; 302-777-6500.

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   18-1949-LPS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | |
|---|---|
| Align Technology, Inc. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   18-1949-LPS |
| 3Shape A/S, 3Shape TRIOS A/S, 3Shape Inc., and 3Shape Manufacturing US, LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                   Mike Walsh
                         480 Bird Rd., Mansfield, MA 02048-1692
                         *(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
            See Exhibit A

| Place: Troutman Pepper Hamilton Sanders, LLP, 125 High Street, 125 High Street #1900, Boston, MA 02110 | Date and Time: <br><br> 11/03/2020 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    09/29/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ James H. S. Levine |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    3Shape A/S
3Shape Trios A/S, 3Shape Inc., and 3Shape Manufacturing US, LLC    , who issues or requests this subpoena, are:

James H.S. Levine; Troutman Pepper LLP; 1313 North Market Street, Suite 5100, Wilmington, DE 19899;
levinejh@troutman.com; 302-777-6500

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.  18-1949-LPS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
   (i) is a party or a party's officer; or
   (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   (i) fails to allow a reasonable time to comply;
   (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   (i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   (i) expressly make the claim; and
   (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

**DEFINITIONS**

The definitions, rules of construction, instructions, words and phrases used in this request shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware. In addition, the following terms shall have the meanings set forth.

1.     "You" and "Your(s)" refer to Mike Walsh.

2.     "Plaintiff" and "Align" shall each mean and refer to Plaintiff Align Technology Inc., including without limitation all of its corporate locations and all predecessors, predecessors-in-interest, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint venture, franchisees, licensees, owners, shareholders, or partnership relationships with Plaintiff and others acting on behalf of Plaintiff. These terms further include, without limitation, Cadent Holdings, Inc. ("Cadent"), its predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), affiliates, divisions and operating units thereof, agents and entities under common control with them, and all past directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint venture, franchisees, licensees, owners, shareholders, or partnership relationships with Cadent and others acting on behalf of Cadent.

3.     "3Shape," "Requestor," and "Defendants" refer to Defendants 3Shape A/S, 3Shape Trios A/S, 3Shape, Inc., and 3Shape Manufacturing US, LLC, individually and/or collectively, and any related 3Shape entity that ultimately becomes a party to the present litigation.

4.     "Asserted Patent(s)," refers to any patent that Align alleges infringement of in this action, including U.S. Patent No. 9,844,420 ("the '420 patent"); 9,975,294 ("the '294

patent"); 9,675,430 ("the '430 patent"); 10,507,088 ("the '088 patent"); and 10,507,089 ("the '089 patent").

5.      "Related Patents" mean any patent or patent application that is related to the Asserted Patents genealogically and/or that claims priority from or to the Asserted Patents, including any U.S. patent applications (such as continuation applications, continuation-in-part applications, and divisional applications) and all foreign counterpart applications, whether pending, allowed, issued, expired, or abandoned.

6.      "Asserted Claim(s)" means any claims of the Asserted Patents alleged by Plaintiff to be infringed, whether directly or indirectly, by any 3Shape Product.

7.      "Align Product(s)" means any and all versions of Align's iTero Element scanners, including the iTero Element, iTero Element 2, iTero Element Flex, and iTero Element 5D scanners, and software related to the functioning of these scanners.

8.      "Align Ecosystem" means any and all products manufactured or offered for sale by Align that are integrated or utilized with the Align Products, including the Invisalign System and accessory products such as scanner sleeves.

9.      "Trios" shall refer to any and all versions of 3Shape's intraoral scanners sold under the name Trios® including, without limitation, any and all configurations of the Trios, Trios 2, Trios 3, and Trios 4 scanners, and software related to the functioning of these scanners.

10.     "Align Customer(s)" means any distributor, reseller, potential purchaser, purchaser, retailer, dentist, dental office, dental practice, orthodontist, orthodontic office, orthodontic practice, university, laboratory, laboratory technician, dental service organization, known internally or commercially to You, in whole or in part, to have purchased, facilitated the purchase of, inquired about purchasing, acquired, distributed, resold, or leased any Align

2

Product within the United States.

11.     "Present Litigation," "this Litigation," or "this Action" shall mean District of Delaware Civil Case No. 18-cv-1949-LPS.

12.     "Third Party" means a Person or Entity other than Align or 3Shape.

13.     "Product" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, assemblage of components/parts (either individually or collectively), process, or method which are designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

14.     "Person" shall mean any natural person or any business, proprietorship, firm, partnership, corporation, association, organization, or other legal entity.  The acts of a Person shall include the acts of directors, officers, owners, members, employees, agents, attorneys or other representatives acting on the Person's behalf.

15.     "Communication" means every manner or method of the disclosure, transfer, or exchange of information, whether orally, electronically, or by document, and whether face-to-face or by telephone, mail, facsimile, e-mail, Internet communication, or otherwise.

16.     "Document" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure, and shall include without limitation any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, file, or printouts; tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, e-mails; pictures, photographs, slides, films, microfilms, motion pictures; or any

other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature including without limitation originals, drafts, and all non-identical copies of each Document (which, by reason of any variation, such as the presence of absence of hand-written notes or underlining, represents a distinct version).  By way of example, the term "Document(s)" as used herein shall include, without limitation: correspondence; blueprints; memoranda; notes; diaries; letters; telegraphs; telegrams; telexes; e-mails; metadata; minutes; agendas; contracts; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; circulars; press releases; advertisements; books; inter-office and intra-office communications; handwritten or typewritten notes; notations or summaries of telephone conversations, meetings, or conferences; bulletins; computer printouts; databases; teletypes; telefax; invoices; worksheets; photographs; tape recordings; and all other tangible items of readable, recorded, or visual material of any kind.

17.     "Thing(s)" shall mean all categories of tangible objects not included within the definition of Document.

18.     "Concern," "Concerning," "Reflect," "Reflecting," "Relate to," "Related to," "Relating to," or "Regarding" shall mean in whole or in part constituting, containing, embodying, reflecting, describing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

19.     "Entity" means any natural person, corporation, partnership, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic person.

20.     The term "identify," when used with respect to any natural person, means that the following information shall be provided: the person's full name; last known home address;

4

last known business address and telephone number; last known title or occupation; and last known employer.

21.     The term "identify," when used with respect to any legal entity, such as a corporation, company, or person other than a natural person, means that the following information shall be provided: the entity's name; the place of incorporation or organization; the principal place of business; and the nature of the business conducted by that legal entity.

22.     The term "identify," when used in conjunction with a document or other thing means to specify the document or thing in sufficient detail to permit 3Shape to locate the document or thing, including but not limited to the following, the Bates range, the date appearing on such Document or, if no date appears thereon, the approximate date the Document was prepared; the identifying code number, file number, title, or label of such Document; a general description of such Document (e.g., letter, memorandum, drawing); the title or heading; the number of pages of which such Document consists; the name of each person who signed or authorized the Document; the name of each addressee; the name of each person having possession, custody, or control of such Document; if the Document existed at one time but does not presently exist, the reason(s) why it no longer exists and the identity of the last person having custody of it; and, if the Document is in a foreign language, whether an English translation of the Document exists, whether partial or complete.

23.     Whenever an entity, whether corporate or otherwise, is referenced in these requests it shall include, without limitation, all predecessors, predecessors-in-interest, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint venture, franchisees, licensees, owners, shareholders, or partnership relationships with that entity and others acting

on behalf of that entity.

## INSTRUCTIONS

1.      In producing requested Documents, You are directed to furnish all Documents available to You including, by way of illustration and not limited to, Documents in the possession, custody or control of Your present or former attorneys, their consultants or investigators, or in the possession of Your consultants, experts, advisors, agents or associates. If no Documents available to You are responsive to a particular request, You are directed to state that no responsive Documents exist.

2.      Each request shall be answered separately and fully, and all responsive documents produced, unless it is objected to, in which event You shall state the reasons for objection and shall produce responsive documents to the extent the request is not objectionable. All grounds for an objection to a request shall be stated with specificity.

3.      As to any portion of any request that refers to Documents that You are aware of which were at one time within Your possession, custody or control, but which are not now within or subject to Your possession, custody or control, You are directed to Identify such Documents in a manner sufficient to describe such Documents for the purpose of preparing and serving a proper subpoena *duces tecum* and to give the name, telephone number, and address of the Person last known by You to have been in possession, custody or control of such Documents.

4.      If You are aware that a Document or group of Documents once existed but has been destroyed, this should be stated, and it should be also stated who destroyed it, when, and why it was destroyed, and the circumstances under which it was destroyed.

5.      If the response to any request withholds any Communication or information, whether in whole or in part, on the grounds that the information sought therein is subject to a

claim of privilege or immunity: (a) Identify each such Communication or information; (b) Identify each Person who made or prepared the Communication or information; (c) Identify each Person who received the Communication or information and Identify each Person present during the Communication; (d) Identify the date of the Communication or information; (e) Identify the general subject matter of the Communication or information in a manner sufficient to support the privilege or immunity claimed; and (f) state the ground upon which the claim of privilege or immunity is made. An objection or claim of privilege or immunity directed to any part of a request does not constitute an excuse for failure to respond to parts of a request for which no objection or claim of privilege or immunity is made.

6.     All Documents are to be produced in the same file or other organizational environment in which they are maintained.  For example, a Document that is part of a file, docket, or other grouping must be produced in the same order or manner of arrangement as the original.  Alternatively, as to each Document and Thing produced in response hereto, You should Identify the request in response to which the Document or Thing is being produced.

7.     Documents including electronically stored information shall be produced in their native format with metadata.  Documents that exist only on paper may be scanned and produced in .tiff format with load files.

8.     Any request to produce a Document "pertaining to," "relating to," or "regarding" a particular subject shall be construed in its broadest, most inclusive sense, and shall be considered a request that You produce Documents that pertain to, relate to, refer to, discuss, summarize, reflect, constitute, contain, embody, pertain to, mention, consist of, comprise, show, comment on, evidence, describe, or in any other way concern the subject matter.

9.     If a Document is in a language other than English and an English translation

exists, provide both the Document and the English translation.

10.   State, for each request, whether or not there exists any Documents within the scope of the request and whether any such Documents are within Your possession, custody, or control.

11.   Each request for production shall be construed independently and not with reference to any other request for the purpose of limitation, unless otherwise specified.

12.   These requests are continuing, and You are required to provide any additional information by way of supplemental response and/or production that may hereafter be obtained by You or any Person acting on Your behalf, which will augment or otherwise modify or complete Your responses.

9

## REQUESTS FOR PRODUCTION

Pursuant to Federal Rule of Civil Procedure 45, You are directed to produce the following documents in accordance with the Federal Rules of Civil Procedure:

1.      A copy of any non-disclosure agreement or any other confidentiality agreement proposed by Align to You.

2.      A copy of any non-disclosure agreement or any other confidentiality agreement entered into by You relating to Your employment at Align.

3.      A copy of any separation agreement or any other agreement entered into by You relating to Your departure from Align.

4.      All Documents, Communications, and Things relating to the circumstances surrounding Your departure from Align.

5.      All Documents and Things relating to any iTero digital workflows or other uses of iTero scan files.

6.      All Documents, Communications and Things relating to interoperability or connectivity between Align's iTero scanner and 3Shape's lab software, including but not limited to 3Shape's Dental System software.

7.      All Documents, Communications and Things relating to the value, in good will or financially, derived from or that can otherwise be attributed to Align's iTero scanner's interoperability or connectivity with 3Shape's lab software, including but not limited to 3Shape's Dental System software.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1949-LPS |
| | ) | |
| 3SHAPE A/S, 3SHAPE TRIOS A/S, and 3SHAPE INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATED PROTECTIVE ORDER

IT IS HEREBY STIPULATED AND AGREED, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and subject to the approval of the Court, by and between the parties and by their respective undersigned counsel, that this Stipulation and Order shall govern the handling of documents, depositions, deposition exhibits, interrogatory responses, admissions, and any other information produced, given, or exchanged by and among the parties and any non-parties in the above-captioned action.

Accordingly, based upon the agreement of the parties, IT IS HEREBY ORDERED pursuant to Rule 26(c) of the Federal Rules of Civil Procedure that the following Procedures shall be adopted for the protection of confidential and proprietary information:

## PROCEDURES FOR PROTECTION OF CONFIDENTIAL AND PROPRIETARY INFORMATION

### 1.    DEFINITIONS

1.1    Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

1.2    "CONFIDENTIAL" Information or Items: information (regardless of how it is

generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

     1.3    <u>Counsel (without qualifier)</u>: Outside Counsel of Record (as well as their support staff).

     1.4    <u>Designating Party</u>: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY."

     1.5    <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in the above-captioned action.

     1.6    <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the instant litigation who: (1) has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in the above-captioned action; (2) is not a current employee of a Party or of a Party's competitor; and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

     1.7    <u>"HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY" Information or Items</u>: extremely sensitive "CONFIDENTIAL Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

     1.8    <u>"HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY" Information or Items</u>: material of a Designating Party or of any Non-Party that a Producing Party

is permitted to produce in this litigation that constitutes or contains non-public Source Code.

1.9     In-House Counsel: attorneys who are employees of a Party to the above-captioned action.  In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

1.10    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to the above-captioned action.

1.11    Outside Counsel of Record: attorneys of a law firm which has appeared on behalf of that Party in this instant litigation and their support staffs.

1.12    Party: a party to the above-captioned action, including all of its officers, directors, and employees.

1.13    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in the above-captioned action.

1.14    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

1.15    Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY."

1.16    Receiving Party: a Party or Non-Party that receives Disclosure or Discovery Material from a Producing Party.

1.17    Source Code: source code, object code (i.e., computer instructions and  data definitions expressed in a form suitable for input to an assembler, compiler, or other translator),

any text written in any high-level programming language defining firmware and/or software functionalities implemented on an integrated circuit, microcode, register transfer language ("RTL"), firmware, and hardware description language ("HDL"), as well as any and all notes, annotations, and other comments of any type related thereto and accompanying the code.  For avoidance of doubt, this includes source files, make files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, and debug files.

**2.**     **COMPUTATION OF TIME**

2.1     The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rule of Civil Procedure 6.

**3.**     **SCOPE**

3.1     The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party, provided such information enters the public domain by means not involving a violation of this Order or other duty of confidentiality; and (b) any information known to the Receiving Party prior to the disclosure that the Receiving Party can demonstrate was already known prior to the time of disclosure, was obtained lawfully, and was obtained by means not involving a violation of this Order or any other duty of confidentiality.  Any use of Protected Material at trial shall be governed

by a separate agreement or order.

**4.** **<u>DURATION</u>**

4.1     The confidentiality obligations imposed by this Order shall remain in effect even after final disposition of the above-captioned action unless otherwise provided herein.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in an action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of that action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

**5.** **<u>DESIGNATING PROTECTED MATERIAL</u>**

5.1     <u>Exercise of Restraint and Care in Designating Material for Protection</u>.  Each Designating Party that designates information or items for protection under this Order must take care to limit any such designation to material that qualifies under the appropriate standards.  If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other Parties in its respective action that it is withdrawing the mistaken designation.

5.2     <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order (*see, e.g.*, subsection 5.2.1 below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated at the time the material is disclosed or produced.  Designation in conformity with this Order requires:

5.2.1     For information in documentary form (*e.g.*, paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing

Party affix the legend "CONFIDENTIAL," or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY" to each page that contains protected material.  A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY" or, where applicable "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY."  After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order.  Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY") to each page that contains Protected Material.

      5.2.2   For testimony given in deposition, the Designating Party may indicate on the record that it is protected at the time it is given in accord with the Federal Rules of Civil Procedure.  The Designating Party may also designate the testimony after the close of the deposition if it inadvertently fails to do so on the record.  The Designating Party shall indicate the level of protection at the time of designation.  The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY."  Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material and that specifies

the level of protection being asserted by the Designating Party. The title page may be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material. The Designating Party shall inform the court reporter of these requirements.

5.2.3 For information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.2.4 <u>Inadvertent Failures to Designate</u>. If timely corrected after recognition by a Producing Party of an inadvertent failure to designate, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Producing Party's right to secure protection under this Order for such material. Upon discovering the inadvertent failure to designate, the Producing Party shall immediately notify the Receiving Party in writing and provide replacement copies with the appropriate confidentiality designation. After receiving such notice, the Receiving Party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this Order. To the extent the Receiving Party has disclosed the Protected Material to any person, or in any circumstance, not authorized under this Stipulated Protective Order, the Receiving Party shall follow the requirements of Section 9.

5.3 <u>Right to Seek Additional Protections</u>. This Order is entered without prejudice to the right of any Party to seek additional protections from the Court as may be necessary under

particular circumstances.

6.    **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1    Timing of Challenges. Any Party or Non-Party may challenge a designation
of confidentiality at any time.  Unless a prompt challenge to a Designating Party's confidentiality
designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic
burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to
challenge a confidentiality designation by electing not to mount a challenge promptly after the
original designation is disclosed.

6.2    Meet and Confer. The Challenging Party shall provide written notice of each
designation it is challenging and describing the basis for each challenge.  The Parties shall
attempt to resolve each challenge in good faith and must begin the process by conferring within
seven (7) calendar days of the date of service of notice as required by Local Rule 7.1.1.  In
conferring, the Challenging Party must explain the basis for its belief that the confidentiality
designation was not proper and must give the Designating Party an opportunity to review the
designated material, to reconsider the circumstances, and, if no change in designation is offered,
to explain the basis for the chosen designation.

6.3    Judicial Intervention. If the Parties cannot resolve a challenge without court
intervention, the Challenging Party shall contact the Court pursuant to Section 8(g) of the
Scheduling Order.

7.    **ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1    Basic Principles. Absent further Order from the Court, the Receiving Party
may only use Protected Material that is disclosed or produced by another Designating Party in
connection with the above-captioned action for prosecuting, defending, or attempting to settle

that action.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.

7.1.1  Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.1.2  A Receiving Party shall not use, rely upon, or refer to another Party's or Non-Party's Protected Material in (1) drafting or amending claims in a U.S. or foreign patent application, or assisting or advising another to do the same; or (2) drafting or amending claims in any *inter partes* review, *ex parte* reexamination, reissue proceeding, or other post-grant review process at the USPTO or any proceeding before the patent office of a foreign country, or assisting or advising another to do the same.

7.1.3  <u>Patent Prosecution Bar</u>. Any attorney, patent agent, expert, or other person who has subscribed to the Stipulated Protective Order on behalf of any Party in this litigation or has otherwise accessed technical material designated by another Party as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY," "CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER" and/or "CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY INFORMATION" which relates to the structure, operation, function, design, or development of any existing or potential product shall not be involved in Patent Prosecution on behalf of the Party represented by that person in this litigation or one of such Party's affiliates relating to the subject matter of intraoral scanners and software related to the functioning of such scanners, gingival deformation, occlusion mapping, overlaying 2D and 3D images in a dental or orthodontic application, software related to processing of 3D

images of a patient's dentition, orthodontic software for treatment planning, identifying areas of interest in scan data, fixing finish and/or margin lines, locking scan data to prevent it from being updated during a scan, stitching scan data, teeth positioning along a treatment path, bracket templates for placing brackets on a patient's teeth, or simulation and systems related to forming a physical model of a patient's dentition based on a 3D image before any foreign or domestic agency, including the United States Patent and Trademark Office.  For the purposes of this paragraph, "Patent Prosecution" shall be defined as substantive patent prosecution activities involving "competitive decision making" as set forth by the Federal Circuit in *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010), such as supervising, assisting or participating in (including preparing, drafting, amending, filing, or otherwise prosecuting applications, claims, responses to office actions, oaths or declarations, or any other paper) the prosecution of any pending or future patent application before the United States Patent and Trademark Office or any other patent foreign or domestic authorities, with respect to any patent application of the represented party claiming (in whole or in part) any of the subject matter set forth above.  "Patent Prosecution" shall not include representing a Party or otherwise participating in reissue proceedings, *ex parte* reexamination, *inter partes* review, covered business method review, or post-grant review proceedings, provided such representation or other participation in such proceedings does not include any involvement in drafting or seeking amendment of any claims on behalf of the represented Party.  This prohibition on Patent Prosecution shall end four (4) years after the earlier of (i) the final resolution or termination of this litigation, including all appeals, (ii) the complete settlement of all claims in this litigation and completion of the requirements of this agreement, or (iii) the withdrawal of that attorney from the Protective Order.  This prosecution bar is personal to the person subscribing to the Protective

Order in this litigation and shall not be imputed to any other person or entity.

7.2     <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may only disclose any information or item designated "CONFIDENTIAL" to:

7.2.1     The Receiving Party's Outside Counsel of Record in the action in which it is produced, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this particular litigation.

7.2.2     Experts (and their staff) of the Receiving Party (1) to whom disclosure is reasonably necessary for the litigation in which said information is produced; and (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

7.2.3   The Court, jury, and court personnel.

7.2.4   Court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for the litigation in which it is produced and who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A).

7.2.5     During their depositions, witnesses in the action to whom disclosure is reasonably necessary, unless otherwise agreed by the Designating Party or ordered by the court. Exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

7.2.6     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information or is employed by the Designating Party.

7.3     Disclosure of "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY"

Information or Items. Unless otherwise ordered by the court or permitted in writing by the

Designating Party, a Receiving Party may only disclose any information or item designated

"HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY" to:

7.3.1    The Receiving Party's Outside Counsel of Record in the action in which it

is produced, as well as employees of said Outside Counsel of Record to whom it is reasonably

necessary to disclose the information in this particular litigation.

7.3.2   Experts (and their staff) of the Receiving Party (1) to whom disclosure is

reasonably necessary for the litigation in which such information is produced and (2) who have

signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

7.3.3   The Court, jury, and court personnel.

7.3.4   Court reporters and their staff, professional jury or trial consultants, and

Professional Vendors to whom disclosure is reasonably necessary for the litigation in which it is

produced and who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit

A).

7.3.5    The author or recipient of a document containing the information or a

custodian or other person who otherwise possessed or knew the information or is employed by

the Designating Party.

7.4     Experts may only review "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL

ATTORNEYS' EYES ONLY" Information or Items after being expressly identified to the

Designating Party as seeking access to CONFIDENTIAL or HIGHLY CONFIDENTIAL

Information or Items.

7.4.1    No less than seven (7) calendar days prior to the initial disclosure to an

Expert of any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY" Information or Items, the Receiving Party shall submit in writing the name of such Expert and his or her educational and detailed employment history to the Designating Party.  If the Designating Party objects to the disclosure of such "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY" Information or Items to such Expert as inconsistent with the language or intent of this Order or on other grounds, it shall notify the Receiving Party in writing of its objection and the grounds therefore prior to the initial disclosure.  If the dispute is not resolved on an informal basis after meeting and conferring as required by Local Rule 7.1.1 within seven (7) days of receipt of such notice of objections, the Parties may seek guidance from the Court.  The disclosure of information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY" shall be withheld to such Expert pending resolution of the dispute.

7.5     <u>Disclosure of "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY" Information or Items</u>.  Information or items designated "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY" are subject to the provisions of Section 8, below.

7.6     <u>Advice to Clients</u>: It is understood that Outside Counsel of Record for a Party may give advice and opinions to his or her client based on his or her evaluation of information designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY" that is provided from the opposing Party to such Outside Counsel of Record in this action, provided that such rendering of advice and opinions shall not reveal the content of such information, except by prior written agreement with counsel for the Producing Party.

7.7     If the Court orders, or if the Producing Party and all Parties to this lawsuit agree, that access to, or dissemination of information designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY" shall be made to persons not included in paragraphs 7.2-7.4 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this Order, and such persons shall be considered subject to it, unless the Court finds that the information is not "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY" as defined in paragraphs 1.2, 1.7, and 1.8, respectively, above.

8.     **DISCLOSURE AND REVIEW OF SOURCE CODE**

8.1     A Designating Party may designate documents, information, or things as "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY," which shall mean material of a Designating Party or of any Non-Party that a Producing Party is permitted to produce in this litigation that constitutes or contains non-public Source Code.

8.2     Materials designated as "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY" shall only be reviewable by SOURCE CODE QUALIFIED PERSONS. SOURCE CODE QUALIFIED PERSONS include the following: (1) Outside Counsel of Record and staff employed by such litigation counsel as necessarily incident to the litigation; (2) personnel at interpretation/translation service establishments retained by, but not regularly employed by, Outside Counsel of Record as necessarily incident to the litigation of this litigation, including without limitation oral interpreters and document translators; (3) the Court, the Judge, the Court Staff, Court personnel and contract personnel who are acting in the capacity of Court

employees; (4) court reporters, stenographers and videographers transcribing or recording testimony at depositions, hearings or trial in this litigation; (5) Experts in this litigation, subject to the provisions of paragraph 8.2.1, below (if a Receiving Party wishes an Expert who has already been identified pursuant to paragraph 7.4 above to receive or review materials designated as "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY," it must "re-comply" with the Expert identification requirement by identifying the expert pursuant to paragraph 8.2.1, below); and (6) a Designating Party's employees, 30(b)(6) witnesses, or Experts designated by the Designating Party.  The Designating Party and the Receiving Party may meet and confer to discuss other potential categories of SOURCE CODE QUALIFIED PERSONS.

   8.2.1 Experts may only review "HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY" Information or Items after being expressly identified to the Designating Party as seeking access to HIGHLY CONFIDENTIAL SOURCE CODE Information or Items.

      8.2.1.1 No less than seven (7) calendar days prior to the initial disclosure to an Expert of any "HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY" Information or Items, the Receiving Party shall submit in writing the name of such Expert and his or her educational and detailed employment history to the Designating Party.  If the Designating Party objects to the disclosure of such "HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY" Information or Items to such Expert as inconsistent with the language or intent of this Order or on other grounds, it

shall notify the Receiving Party in writing of its objection and the grounds therefore prior to the initial disclosure. If the dispute is not resolved on an informal basis after meeting and conferring as required by Local Rule 7.1.1 within seven (7) days of receipt of such notice of objections, the Parties may seek guidance from the Court. The disclosure of information designated as "HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY" shall be withheld to such Expert pending resolution of the dispute.

8.3     Source Code shall be provided with the following additional protections:

8.3.1     Nothing in this Protective Order shall obligate the Parties to produce any Source Code, nor act as an admission that any particular Source Code is discoverable.

8.3.2     Access to Source Code will be given only to SOURCE CODE QUALIFIED PERSONS.

8.3.3     Access to Source Code shall be provided on no more than two "stand-alone" computer(s) (*i.e.*, the stand-alone secure computer(s) may not be linked to any network, including a local area network ("LAN"), an intranet, or the Internet, and may not be connected to any printer or storage device other than the internal hard disk drive of the stand-alone secure computer(s) without the consent of the Designating Party). The stand-alone secure computer(s) shall be kept in a secure location at the offices of the Designating Party's Outside Counsel of Record, or at such other location as the Designating Party and Receiving Party mutually agree. The stand-alone secure computer(s) may be password protected and shall have the Source Code stored on a hard drive contained inside the stand-alone secure computer(s) or, at the Designating

Party's election, otherwise accessible on the stand-alone secure computer(s). The stand-alone secure computer(s) may be locked down so that additional peripheral devices cannot be connected to the stand-alone secure computer(s) by the Receiving Party. The Designating Party shall produce Source Code in computer searchable format on the stand-alone secure computer(s). The stand-alone secure computer(s) shall, at the Receiving Party's request, include reasonable analysis tools appropriate for the type of Source Code. The Receiving Party shall be responsible for providing the tools or licenses to the tools that it wishes to use to the Designating Party so that the Designating Party may install such tools on the stand-alone secure computer(s). The Receiving Party must provide the Designating Party with the licensed software tool(s) at least seven (7) calendar days in advance of the date upon which the Receiving Party wishes to have the software tools available for use on the stand-alone secure computer. The Receiving Party shall not at any time attempt or request the installation of any compilers, interpreters, or simulators in connection with the Designating Party's Source Code. To the extent that such tools record local working files or other records reflecting the work performed by the Receiving Party, such files and records shall not be reviewed, altered, or deleted by the Designating Party.

8.3.4 The Receiving Party shall provide at least three (3) business days' notice to access the source code and make reasonable efforts to restrict its requests for access to the stand-alone secure computer(s) to normal business hours, which for purposes of this paragraph shall be 9:00 a.m. through 5:30 p.m. local time at the reviewing location. Upon reasonable notice from the Receiving Party, which shall not be less than five (5) business days in advance, the Designating Party shall make reasonable efforts to accommodate the Receiving Party's request for access to the stand-alone secure computer(s) outside of normal business hours. Such an expanded review period shall not begin earlier than 8:00 a.m. and shall not end later than 8:00

p.m. local time at the reviewing location.   The Parties are to cooperate in good faith such that maintaining the Source Code at the offices of the Designating Party's outside litigation counsel shall not unreasonably hinder the Receiving Party's ability to efficiently conduct the prosecution or defense in this litigation.   Proper identification of all SOURCE CODE QUALIFIED PERSONS shall be provided prior to any access to the standalone secure computer(s).

8.3.5   All SOURCE CODE QUALIFIED PERSONS who will review Source Code on behalf of a Receiving Party shall be identified in writing to the Designating Party at least seven (7) calendar days in advance of the time that such person reviews such Source Code.   The Designating Party shall provide these individuals with information explaining how to start, log on to, and operate the stand-alone secure computer(s) in order to access the produced Source Code on the stand-alone secure computer(s).   For subsequent reviews by SOURCE CODE QUALIFIED PERSONS, the Receiving Party shall give at least three business days (and at least 72 hours) notice to the Designating Party of such review.   Advance notice for a subsequent review shall be sufficient when provided by 1:00 p.m. (local time at the location of the stand-alone secure computer(s)) during the course of a review session, for such review to continue on the next subsequent business day.

8.3.6   No person other than the Designating Party may alter, dismantle, disassemble or modify the stand-alone secure computer(s) in any way, or attempt to circumvent any security feature of the stand-alone secure computer(s).

8.3.7   No copies shall be made of Source Code, whether physical, electronic, or otherwise, other than volatile copies necessarily made in the normal course of accessing the Source Code on the stand-alone secure computer(s), except for: (1) print outs of reasonable portions of the Source Code; and (2) such other uses to which the Parties may agree or that the

Judge or Court may order.  The Receiving Party shall not use any outside electronic device to copy, record, photograph, or otherwise reproduce Source Code.  "Reasonable portions of the Source Code" shall be limited to the portions that are necessary to understand a relevant feature of an accused product in this litigation.  The Designating Party shall not unreasonably withhold approval and the Parties shall meet and confer in good faith to resolve any disputes.   The Receiving Party may not bring any electronic devices into the secured review room, including but not limited to, cameras, video recording equipment, sound recording  equipment, smartphones, tablets, cellular telephones, laptops or computers, floppy drives, CDs, DVDs, USB-connectable devices, zip drives or any drives of any kind, peripheral equipment and/or other electronic recording media.  The Receiving Party may take notes related to the Source Code, so long as such notes are clearly designated and treated as HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY (as appropriate depending on whether the notes contain excerpts of the Source Code).  The Designating Party may exercise personal supervision from outside the review room over the Receiving Party when the Receiving Party is in the Source Code review room.  Such supervision, however, shall not entail review of any work product generated by the Receiving Party, *e.g.*, monitoring the screen of the stand-alone secure computer(s), monitoring any surface reflecting any notes or work product of the Receiving Party, or monitoring the key strokes of the Receiving Party.  There will be no video supervision by any Designating Party. The Designating Party may employ security measures on the stand-alone secure computer(s) such as physical measures to prevent or detect tampering with the stand-alone secure computer(s), disabling of communication ports and software functionality, data encryption, access logging limitations on access privileges by the Receiving Party, and specification and configuration of

the operating system, so long as such measures do not impact the normal operation of the reasonable analysis tools to be used for inspecting the Source Code. The Receiving Party shall not attempt to circumvent any security measures implemented by the Designating Party, under any circumstances. In order to verify that its Source Code has not later been altered, the Designating Party may benchmark the materials before and after they are provided, but shall not install any keystroke or other monitoring software on the stand-alone secure computer(s).

8.3.8    Proper identification of all SOURCE CODE QUALIFIED PERSONS shall be provided prior to any access to the secure location or the stand-alone secure computer(s). Proper identification is hereby defined as a photo identification card sanctioned by the government of a U.S. state, by the District of Columbia, by the United States federal government, or by the nation state of the authorized person's current citizenship. Access to the secure location or the stand-alone secure computer(s) may be denied, at the discretion of the Designating Party, to any individual who fails to provide proper identification. Any SOURCE CODE QUALIFIED PERSONS, other than Outside Counsel of Record of the Receiving Party, who request access to the secure location or the stand-alone secure computer(s) shall counter-sign a copy of the Agreement to Be Bound attached to this Order as Exhibit A.

8.3.9    Nothing may be removed from the stand-alone secure computer(s), either by the Receiving Party or at the request of the Receiving Party, except for such uses to which the Parties may expressly agree or that the Judge or the Court may order.

8.3.10  The stand-alone secure computer(s) shall be configured with a means for selecting Source Code for printing, as permitted herein. To facilitate the printing process, the Reviewing Party may create local PDF copies of reasonable portions of the Source Code to be subsequently printed onto paper copies in accordance with this paragraph. SOURCE CODE

QUALIFIED PERSONS may select portions of the Source Code to print only when reasonably necessary to facilitate the Receiving Party's preparation of filings with the Judge or Court, expert reports, contentions, and hearing exhibits, and shall print only such portions as are believed to be relevant to the claims and defenses in the case and are reasonably necessary for such purposes. SOURCE CODE QUALIFIED PERSONS shall not print Source Code that has not been reviewed on the stand-alone secure computer(s), or in order to review the Source Code elsewhere in the first instance, *i.e.*, as an alternative to reviewing the Source Code electronically on the stand-alone secure computer(s).  All original printed pages of Source Code shall be retained by the Designating Party.  At the request of the Receiving Party, the Designating Party shall, within seven (7) calendar days, provide one (1) hard copy print out of the specific lines, pages, or files of the Source Code that the Receiving Party believes in good faith are necessary to understand a relevant feature of an accused product.  The Designating Party and the Receiving Party shall meet and confer regarding any hard copies of the Designating Party's Source Code requested by the Receiving Party that exceed thirty (30) continuous pages of the Designating Party's produced source code for any given software or hardware description release.  If the Designating Party objects in any manner to the production of the requested source code (*e.g.*, the request is too voluminous), it shall state its objection prior to the end of the seven (7) calendar days pursuant to this paragraph.  In the event of a dispute, the Parties will meet and confer within seven (7) calendar days of the objection being raised and if they cannot resolve it the Parties will raise it with the Judge.

8.3.11  Hard copy print outs of Source Code shall be provided on Bates numbered and watermarked or colored paper clearly labeled HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY on each page and shall be maintained by the Receiving Party's

outside litigation counsel or other SOURCE CODE QUALIFIED PERSONS in a secured locked area. To the extent that hard copy print outs of Source Code are maintained by a Receiving Party's Expert, the Expert shall store the hard copy print outs in a secure locked container located in the Expert's home office or office at all times when the hard copy print outs of Source Code are not in use. The Receiving Party may also temporarily keep the print outs at: (1) the Court for any proceedings(s) relating to the Source Code, for the dates associated with the proceeding(s); (2) the sites where any deposition(s) relating to the Source Code are taken, for the dates associated with the deposition(s); and (3) any reasonably secure intermediate location reasonably necessary to transport the print outs (*e.g.*, a safe in a locked hotel room prior to a Court proceeding or deposition, or a secure carrier such as FedEx). For avoidance of doubt, an access-restricted location within the facilities of Outside Counsel of Record or a qualified Expert, such as a conference room within an access restricted office while the print outs are being reviewed or used or a locked drawer or cabinet when the print outs are not in use, shall constitute a secured locked area. The Receiving Party shall exercise due care in limiting visual access to the print outs, maintaining the security of the print outs at these temporary locations, and transporting the print outs to and from these temporary locations. Moreover, no more than thirty (30) continuous pages of the Designating Party's Source Code for any given software or hardware description release, in hard copy format, may be shipped via FedEx, or other similar carrier, in any one single container. For the avoidance of doubt, any shipment of the Designating Party's Source Code in paper format that exceeds the limitations above would be required to be shipped in multiple containers. No further hard copies of such Source Code shall be made and the Source Code shall not be transferred into any electronic format or onto any electronic media except that:

8.3.11.1    The Receiving Party is permitted to make up to four (4)

additional hard copies for use as working copies by SOURCE CODE QUALIFIED PERSONS.

8.3.11.2    The Receiving Party is permitted to make up to three (3) additional hard copies for use at a deposition.  One hard copy of the source code may be marked as an exhibit for the deposition, and then maintained by the Designating Party.  All other copies shall be returned to the Designating Party or securely destroyed immediately after the deposition is concluded.

8.3.11.3    The Receiving Party is permitted to make up to five (5) additional hard copies for the Court in connection with a Court filing, hearing, or trial, and of only the specific pages directly relevant to and necessary for deciding the issue for which the portions of the Source Code are being filed or offered.  To the extent portions of Source Code are quoted in a Court filing, either (1) the entire document will be stamped and treated as HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY; or (2) those pages containing quoted Source Code will be separately stamped and treated as HIGHLY CONFIDENTIAL SOURCE CODE-ATTORNEYS' EYES ONLY.

8.3.11.4    To the extent permitted by the Judge and the Court, the Parties will seek permission to treat print outs of Source Code, as physical exhibits that will be submitted to the Court in sealed

and labeled envelopes.  Notwithstanding the foregoing, the

Designating Party and the Receiving Party shall meet and

confer to the extent that the Receiving Party believes that it is

reasonably necessary to submit electronic copies of the Source

Code as exhibits.  To the extent that physical exhibits of the

Source Code are not permitted by the Judge or the Court,

electronic copies of Source Code may be made to be included

in documents and filings which, pursuant to the Court's rules,

procedures and order(s), must be filed or served electronically.

In either event, electronic copies of (i) excerpts, of less than

forty (40) contiguous lines of Source Code, from the hard copy

print outs of the Source Code, (ii) summaries and/or

descriptions of the Source Code created by the Receiving

Party, and (iii) testimony related to the Source Code (*e.g.*,

deposition and/or hearing transcripts or videos) may be

included, as reasonably necessary, in: (a) documents and

filings that may be filed, submitted, and/or served

electronically; (b) transmissions by a SOURCE CODE

QUALIFIED PERSON to a SOURCE CODE QUALIFIED

PERSON; or (c) electronic files that are securely stored on a

Receiving Party's or SOURCE CODE QUALIFIED

PERSON'S server, hard drive, or thumb drive.  After any such

storage, electronic filing, submission, or service, the Receiving

Party may maintain reasonable copies of such Source Code, but shall delete all other electronic copies of Source Code from all Receiving Party electronic storage devices.

8.3.11.5    The Designating Party shall, on request, make a searchable electronic copy of the Source Code available on a secure computer during depositions of witnesses who would otherwise be permitted access to such Source Code.  The Receiving Party shall make such request at the time of the notice for deposition.

8.3.12 Nothing in this Protective Order shall be construed to limit how a Designating Party may maintain material designated as HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY.

8.3.13 Outside Counsel of Record for the Receiving Party with custody of HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY Information shall maintain a source code log containing the following information: (1) the identity of each person granted access to the HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY Information; and (2) the first date on which such access was granted.  Outside Counsel of Record for the Receiving Party will produce, upon request, each such source code log to the Designating Party within twenty-one (21) calendar days of the final termination of the litigation.

8.3.14 Information designated as HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY Information must be stored and maintained at a location in the United States and in a secure manner that ensures that access is limited to SOURCE CODE QUALIFIED PERSONS.   To ensure compliance with applicable United States Export

Administration Regulations, HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY Information may not be exported outside the United States by a SOURCE CODE QUALIFIED PERSON.   For clarity, HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY Information is not considered exported if carried or sent by a SOURCE CODE QUALIFIED PERSON via secure carrier to a foreign country for the purpose of litigation.   Nothing in this paragraph is intended to limit what a foreign Designating Party may do with its own Source Code.

8.3.15 Unless otherwise permitted in writing between Designating Party and Receiving Party, Experts given access to HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY Information produced by another Party must agree in writing not to perform hardware or software development work or product development work intended for commercial purposes related to the particular information disclosed in the HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY from the time of first receipt of such material through the date the expert ceases to have access to any such material.   For avoidance of doubt, during periods in which the individual person(s) has ceased to have possession of such material or any documents or notes reflecting such material, this section shall not apply.

8.3.16 Disclosure of a qualified Expert's or consultant's educational and detailed employment history to the Designating Party shall include at least (a) the Expert's name; (b) business address; (c) occupation; (d) the Expert's CV; (e) any previous or current relationship with the Designating Party or any of the Parties to this Litigation; (f) a list of other cases in which the Expert has testified (at trial or deposition) within the last six years; and (g) a list of all companies with which the Expert has consulted or by which the Expert has been employed within

the last four years, the dates of the consultancy or employment, a brief description of the subject matter of the consultancy or employment.  The Disclosing Party shall also provide copies of the "Acknowledgement and Agreement To Be Bound" to attached as Exhibit A, signed by the Expert, to the Designating Party.  This paragraph does not require the Disclosing Party to disclose aspects of any Expert's business or profession or companies with which the proposed expert has consulted or by which the proposed expert has been employed to the extent such information is confidential or subject to a non-disclosure agreement; in any such instance, the Disclosing Party will describe the confidential experience in such a manner so as to enable the other Party to determine that no valid concerns exist regarding the Disclosing Party's retention of that Expert.

9.     **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

9.1     If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY" that Party must:

9.1.1     Promptly notify in writing the Designating Party.  Such notification shall include a copy of the subpoena or court order.

9.1.2     Promptly notify in writing the Party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification shall include a copy of this Stipulated Protective Order; and

9.1.3     Cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

9.2     If the Designating Party timely seeks a protective order, the Party served with the

subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission.  The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

      9.3     <u>Other Proceedings</u>. By entering this Order and limiting the disclosure of information in the above-captioned action, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or Party subject to this Order who becomes subject to a motion to disclose another Party's information designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY" pursuant to this Order shall promptly notify that Party of the motion so that the Party may have an opportunity to appear and be heard on whether that information should be disclosed.

## 10.   <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION</u>

      10.1    The terms of this Order are applicable to information produced by a Non-Party in the above-captioned action and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY."  Such information produced by Non-Parties in connection with the litigation is protected by the remedies and relief provided by this Order.  Each Non-Party Producing Party shall be provided a copy of this Order by the Party seeking information from said

Non-Party.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

**11.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

11.1     If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.  The execution of the "Acknowledgement and Agreement to Be Bound" in this instance does not mean that the person or persons shall be entitled to receive Protected Material going forward unless the person or persons meet the requirements of Sections 7.2 or 7.3 as provided above.

**12.     INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

12.1     Pursuant to Federal Rule of Evidence 502, the inadvertent production or disclosure of any document or thing (including information and Protected Material) otherwise protected by the attorney-client privilege, work-product immunity, or other privilege or immunity shall not operate as a waiver of any such privilege or immunity.  If any Receiving Party recognizes that any Producing Party may have inadvertently produced such protected information, it shall notify the Producing Party promptly, and follow such procedures as set forth in this Order.  If, after recognizing that privileged information has been produced or disclosed (through notice by a Receiving Party or otherwise), the Producing Party who made the inadvertent production or disclosure may send to each Receiving Party a written request for return of the inadvertently

produced or disclosed document or thing within a reasonably prompt period of time following discovery of the inadvertent production.  Within seven (7) calendar days of receiving such a request, the Receiving Party shall (a) return to the Producing Party all such documents and things identified by the Producing Party as being protected by the attorney-client privilege, work-product immunity, or other privilege or immunity and as having been inadvertently produced, and (b) delete any electronic records thereof.  The Receiving Party shall not utilize the information contained in the inadvertently produced documents or things for any purpose, or disseminate or transmit such information, except as provided in subparagraph 12.2 below.

12.2    If the Receiving Party wishes to contest that any such document or thing is protected by any privilege or immunity, the Receiving Party shall so notify the Producing Party in writing when the document or thing is returned to the Producing Party ("Notice of Designation"). If the Receiving Party notifies the Producing Party that it intends to contest the claim of privilege, the Receiving Party may retain one (1) copy of the document(s) or thing(s) at issue for the purposes of filing a motion to contest the designation.  The copy retained by the Receiving Party must be sequestered, and may not be used for any purpose except to present the information to the Court for a determination of the claim of privilege.

12.3    Within seven (7) calendar days after receiving a Notice of Designation, the Producing Party shall provide to the Receiving Party for each such document or thing a description of the basis for the claim of privilege or immunity.

12.4    Within seven (7) calendar days after receiving a Notice of Designation, the Parties shall meet-and-confer pursuant to Section 8(g) of the Scheduling Order.

12.5    Within seven (7) calendar days after the meet-and-confer, the Receiving Party may seek relief from the Court pursuant to Section 8(g) of the Scheduling Order to compel

production of such documents and things, the protection of which is still disputed.  Any letter brief filed pursuant to this paragraph shall be filed under seal in accordance with the procedures set forth herein for filing Protected Material with the Court.  If the Receiving Party does not contact the Court pursuant to Section 8(g) of the Scheduling Order to contest the designation within such seven (7)-day period, the one (1) copy, if any, retained by the Receiving Party as set forth in subparagraph 12.2 of this Section shall be immediately returned to the Producing Party.  Likewise, in the event that the Court rejects the Receiving Party's challenge to the privileged status of the inadvertent production, the one (1) copy, if any, retained by the Receiving Party as set forth in subparagraph 12.2 of this Section shall be immediately returned to the Producing Party.

12.6    With respect to documents and things subsequently generated by a Receiving Party, which documents and things contain information derived from such inadvertently produced documents and things, if the Receiving Party does not notify the Producing Party that the Receiving Party disputes the claims of attorney-client privilege or work-product immunity, or if the Court rejects any challenge by the Receiving Party to the privileged status of the inadvertent production, the Receiving Party shall make reasonable efforts to either destroy the derivative documents and things or redact from them all such derivative privileged or work product information in a manner such that the derivative information cannot in any way be retrieved or reproduced.

12.7    The procedures set forth in this Section for challenging the privileged status of an inadvertent production shall not result in any waiver of the attorney-client privilege, the work product immunity, or any other privilege or immunity.  There shall be no waiver of the attorney-client privilege, the work product immunity, or any other privilege or immunity for an inadvertent disclosure or production if the Producing Party complies with the procedures set forth in this Section with respect to such inadvertent disclosure or production.

13.    **INFORMATION SUBJECT TO HIPAA**

13.1    The Parties agree that Protected Health Information ("PHI") shall have the same meaning as "Protected Health Information" as defined in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") section 160.103, 45 C.F.R. § 160.103.  The definition of confidential information in the Protective Order includes PHI, as defined here.

13.2    The Parties agree that neither is required to produce any PHI in this Litigation.

13.3    The Parties further agree that, to the extent that any produced document contains PHI, any and all such PHI may be permanently redacted by the Producing Party prior to production of the redacted document.

13.4    Notwithstanding the foregoing, the Parties agree that if a Challenging Party alleges that PHI is relevant and/or its production is necessary, then the Parties shall attempt to renegotiate this provision.  The Parties further agree that if such attempted renegotiation proves unsuccessful, they will submit any dispute regarding the production of PHI to the Judge for resolution and the other agreements provided in this Section 13 shall not serve as a basis for opposing any such motion.

14.    **INFORMATION SUBJECT TO EUROPEAN DATA PROTECTION REGULATIONS**

14.1    The Parties agree that Personal Data ("PD") shall have the same meaning as "Personal Data" as defined in the REGULATION (EU) 2016/679 of 27 April 2016 ("GDPR") article 4, paragraph 1 and as in the Danish Act No. 429 of 31 May 2000 on Processing of Personal Data ("APPD") section 3(1)1.  The Parties further agree that Data Concerning Health ("DCH") shall have the same meaning as "Data Concerning Health" as defined in GDPR article 4, paragraph 15 and as referred to in APPD section 7(1).  The definition of confidential information in the Protective Order includes PD and DCH, as defined here.

14.2     The Parties agree that neither is required to produce DCH in this Litigation.

14.3     The Parties further agree that, to the extent that any produced document contains DCH, any and all such data may be permanently redacted by the Producing Party prior to production of the redacted document.

14.4     Other than DCH, the Parties agree that all PD – namely PD concerning customers, employees and business partners – not strictly necessary in relation to this Litigation, may be permanently redacted by the Producing Party prior to production of the redacted document.

14.4.1   In regard to PD not redacted due to the strict necessity in relation of this Litigation, the Parties agree to:

14.4.1.1   document the strict necessity to retain the individual PD items in relation to this Litigation;

14.4.1.2   ensure appropriate security measures for the PD, including protection against unauthorized or unlawful processing (as defined in GDPR article 4, paragraph 2) and against accidental loss, destruction or damage, using appropriate technical or organizational measures;

14.4.1.3   develop measures to accommodate requests regarding the rights of the data subject as listed in GDPR articles 12-15;

14.4.1.4   ensure that the PD is not used for any other secondary purposes beyond this Litigation and any related litigation per Section 17 of this Protective Order; and

14.4.1.5   establish retention periods for the preservation of PD.

14.4.1.5.1   Regardless   of   the   retention   period

ultimately agreed upon, the Parties acknowledge that PD may not be stored any longer than what is strictly necessary in relation to this Litigation and any related litigation per Section 17 of this Protective Order.

14.5     Notwithstanding the foregoing, the Parties agree that if a Challenging Party alleges that PD and/or DCH are relevant and/or their production is necessary, then the parties shall attempt to renegotiate this provision.  The Parties further agree that, if such attempted renegotiation proves unsuccessful, they will submit any dispute regarding the production of PD and DCH to the Judge for resolution and the other agreements provided in this Section 14 shall not serve as a basis for opposing any such motion.

15.     **INFORMATION SUBJECT TO ISRAELI AND RUSSIAN DATA PROTECTION REGULATIONS**

15.1     The Parties further agree that they will comply with Israel's Protection of Privacy Law, 5741-1981, Russia's Data Protection Act No. 152 FZ, and Articles 23 and 24 of the Russian Constitution.  The definition of confidential information in the Protective Order is amended to include information subject to those laws, acts, and articles.

15.2     The Parties agree that neither is required to produce any information subject to those laws, acts, and articles to the extent that those laws, acts, and articles prohibit the production of information.

15.3     The Parties further agree that, to the extent that any produced document contains information that may not be produced under those laws, acts, and articles, all such information may be permanently redacted by the Producing Party prior to production of the redacted document.

15.4     Notwithstanding the foregoing, the Parties agree that if a Party alleges that information redacted pursuant to this Section 15 is relevant and/or its production is necessary, or

that its redaction was not required under those laws, acts, and articles, then the Parties shall attempt to renegotiate this provision.  The Parties further agree that if such attempted renegotiation proves unsuccessful, they will submit any dispute regarding the production of such information to the Judge for resolution and the other agreements provided in this Section 15 shall not serve as a basis for opposing any such motion.

16.     **SECURITY AND CONFIDENTIALITY OF PROTECTED DATA**

16.1     "Protected Data" constitutes highly sensitive materials requiring special protection and includes any information that a Party believes in good faith to be subject to federal, state or foreign data protection laws or other privacy obligations including the laws identified in Sections 13-15.  To the extent any is produced following execution of this Protective Order, Protected Data shall be marked with the legend "Protected Data," or a comparable notice.  Any Party receiving data marked with the legend "Protected Data" shall take technical and organizational security measures that are appropriate to the risks presented by the processing, such as security measures to prevent unauthorized access by persons not subscribed to the Protective Order.  Any person acting under the authority of a Receiving Party, including a data processor, must not process the data except on instructions from the Receiving Party.  Any Party receiving data marked with the legend "Protected Data" shall have in place procedures so that any third party it authorizes to have access to the personal data, including processors, will respect and maintain the confidentiality and security of the personal data.  Failure to mark a document as containing "Protected Data" shall not be deemed a waiver of the requirements of the relevant laws identified in Sections 13-15 if it is later determined that such a marking was warranted.

17.     **CROSS USE**

17.1     By entering into the agreement memorialized in this Section 17, the Parties do not

concede or otherwise agree or accept that any information from this litigation is relevant or admissible as evidence in any other litigation, and expressly reserve all objections to any use of any such information in any other litigation, except the Parties hereby waive their right to object on the grounds that confidential business information of a Party provided in this litigation may only be used in this litigation.

17.2     The Parties agree, subject to the reservation of objections above, that the Parties may use any Disclosure or Discovery Material of a party provided in this litigation in any of the following litigations between the Parties, and also that the Parties may use any Disclosure or Discovery Material of a Party provided in any of the following litigations between the Parties in this litigation (collectively, "Cross-Use Information"), despite any restrictions to the contrary in this Order, any addendum thereto, or any Protective Order in any of the following litigations, and that, for purposes of this provision, such Cross-Use Information will be deemed produced in this litigation and the following litigations between the parties, and that such Cross-Use Information from the following litigations between the Parties will be deemed produced in this litigation:

- *Certain Intraoral Scanners and Related Hardware and Software,* Inv. No. 337-TA-1090 (U.S.I.T.C.);

- *Certain Color Intraoral Scanners and Related Hardware and Software,* Inv. No. 337-TA-1091 (U.S.I.T.C.);

- *Certain Dental and Orthodontic Scanners and Software,* Inv. No. 337-TA-1144 (U.S.I.T.C.);

- *Align Technology, Inc. v. 3Shape A/S, et al.*, C.A. No. 17-1646-LPS-CJB (D. Del.);

- *Align Technology, Inc. v. 3Shape A/S, et al.*, C.A. No. 17-1647-LPS-CJB (D. Del.);

- *Align Technology, Inc. v. 3Shape A/S, et al.*, C.A. No. 17-1648-LPS-CJB (D. Del.);

- *Align Technology, Inc. v. 3Shape A/S, et al.*, C.A. No. 17-1649-LPS-CJB (D.

Del.);

- *Align Technology, Inc. v. 3Shape A/S, et al.*, C. A. No. 18-1949-LPS-CJB (D. Del);

- *Align Technology, Inc. v. 3Shape A/S, et al.*, C. A. No. 18-1950-LPS-CJB (D. Del);

- *3Shape A/S v. Align Technology, Inc.*, C.A. No. 18-0697-LPS-CJB (D.Del.); and

- *3Shape A/S v. Align Technology, Inc.*, C.A. No. 18-00886-LPS-CJB (D.Del.).

17.3    Nothing in this cross-use agreement obviates or changes the rights provided by Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 concerning the admissibility of evidence from prior proceedings.

17.4    To the extent that a document containing Cross-Use Information also includes Non-Party CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY information, such information must be redacted therefrom before the Cross-Use Information can be used in any other litigation, unless permission to so use the information is obtained from the Non-Party.

## 18.    <u>**MISCELLANEOUS**</u>

18.1    <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to see its modification by the Court in the future.

18.2    <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

18.3    <u>Filing Protected Material</u>. All documents of any nature, including briefs, that have been designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL ATTORNEYS' EYES

ONLY," or "HIGHLY CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY" and that are filed with the Court, shall be filed under seal in accordance with the Local Rules of the United States District Court for the District of Delaware.

## 19.    **FINAL DISPOSITION**

19.1    Within 60 calendar days after the final disposition of the above-captioned action, as defined in Section 3, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline confirming the return or destruction of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 3.

| | |
|---|---|
| */s/ Jeff Castellano* | */s/ James H. S. Levine* |
| John W. Shaw (No. 3362) | James H. S. Levine (Del. Bar No. 5355) |
| Karen E. Keller (No. 4489) | Joanna Cline (Del. Bar No. 5873) |
| Jeff Castellano (No. 4837) | PEPPER HAMILTON LLP |
| SHAW KELLER LLP | Hercules Plaza |
| I.M. Pei Building | 1313 North Market Street |
| 1105 North Market Street, 12th Floor | Suite 5100 |
| Wilmington, DE 19801 | Wilmington, DE 19899-1709 |
| (302) 298-0700 | Tel: 302.777.6500 |
| jshaw@shawkeller.com | Fax: 302.421.8390 |
| kkeller@shawkeller.com | Email: levinejh@pepperlaw.com |
| jcastellano@shawkeller.com | |
| | *Attorneys for Defendant* |
| *Attorneys for Plaintiff* | |

Dated: May 5, 2020

SO ORDERED this_____day of_____, 2020.

_____
United States District Judge

## EXHIBIT A
## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name],

of _____ [print

or type full address], declare under penalty of perjury that I have read in its entirety and understand

the Stipulated Protective Order that was issued by the United States District Court for the District

of Delaware on _____ [print or type date] in the above-captioned

case of *Align Technology, Inc. v. 3Shape A/S, 3Shape Trios A/S, and 3Shape Inc.*, C. A. No. 18-

1949-LPS ("the Action").  I agree to comply with and to be bound by all the terms of this Stipulated

Protective Order and I understand and acknowledge that failure to so comply could expose me to

sanctions and punishment in the nature of contempt.  I solemnly promise that I will not disclose in

any manner any information or item that is subject to this Stipulated Protective Order to any person

or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the District

of Delaware for the purpose of enforcing the terms of this Stipulated Protective Order, even if such

enforcement proceedings occur after termination of this Action.

Date: _____

City and State where
sworn and signed: _____

Printed name: _____

Signature: _____

# Exhibit F

| | |
|---|---|
| **From:** | Margeson, Grant N. |
| **To:** | Coghill, Kimberly E.; Shaw, David J.; DE-Align-1949; SKAlignTechnology@shawkeller.com |
| **Cc:** | 3Shape_1949_Pepper |
| **Subject:** | RE: Align v. 3Shape (1949) - Mike Walsh Deposition |
| **Date:** | Monday, November 9, 2020 9:00:39 PM |
| **Attachments:** | image001.png |

Hi Kim,

We have tried to reach an amicable resolution and, unfortunately, that has not been possible. If you insist on incurring the expense to make a statement on the record, we cannot prevent you—but it is 3Shape's decision and we find it wasteful of everyone's time. The issue is ripe for the Court's resolution.

Thanks,

Grant

PAUL
HASTINGS

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Coghill, Kimberly E. <Kimberly.Coghill@Troutman.com>
**Sent:** Monday, November 9, 2020 7:42 PM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; Shaw, David J. <David.Shaw@Troutman.com>; DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Cc:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Mike Walsh Deposition

Grant,

This isn't contentious. 3Shape is taking all precautions to preserve its rights with respect to deposing third-party, Mike Walsh, in compliance with the Federal and Local Rules. It goes without saying we disagree with the positions in your e-mail below.

Regards,

Kim

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Monday, 9 November, 2020 21:52
**To:** Shaw, David J. <David.Shaw@Troutman.com>; Coghill, Kimberly E. <Kimberly.Coghill@Troutman.com>; DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Cc:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Subject:** RE: Align v. 3Shape (1949) - Mike Walsh Deposition

**EXTERNAL SENDER**

David,

We are disappointed that 3Shape refuses to follow the Local Rules, but are forced to join the deposition to make sure the record is accurate. Did you contact Planet Depos to see if they could cancel without incurring fees at any point after our meet and confer this morning or my email from this afternoon below? We will contact Planet Depos and ask if they will waive fees as the deposition is being rescheduled given your refusal to proceed on undisputed issues. And, as you know, both parties are using the same vendor for depositions so hopefully they will be cooperative having secured both parties' business from a competitor vendor. In addition, it is unclear what "record of what has transpired" that 3Shape wants to make—as 3Shape has argued previously, the record is made on the emails. There is nothing to be gained by pursuing the deposition transcript to make a record. This all seems wasteful, and we note that you continue to identify no argument or authority contradicting the clear guidance of Local Rule 30.2. We again ask for cooperation over posturing.

And, to correct your statement below, there was no retraction by Mr. Walsh—Mr. Walsh was available tomorrow to be deposed on the issues as outlined in my email from Friday, November 6. 3Shape—not Align, not Mr. Walsh, and not Paul Hastings—refused to proceed on that basis and suggested a motion for protective order would be the only way to resolve the dispute.  We made clear in that email that Mr. Walsh would only be deposed on the relevant issues identified in my email absent a Court order, and Ms. Coghill's late Sunday evening response confirms that 3Shape understood the scope of the permissible testimony.  Given that 3Shape was fully aware of Mr. Walsh's positions and demanded he file a protective order, it cannot now complain.  3Shape's refusal to be reasonable and accommodating necessitated any "costs and fees" incurred.

Thanks,

Grant

---



**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 | grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Shaw, David J. <David.Shaw@Troutman.com>
**Sent:** Monday, November 9, 2020 6:13 PM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; Coghill, Kimberly E. <Kimberly.Coghill@Troutman.com>; DE-Align-1949 <DE-Align-1949@paulhastings.com>; SKAlignTechnology@shawkeller.com
**Cc:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Mike Walsh Deposition

Hi Grant,

We disagree with the substance of your message. But I'm writing now only to tell you that yes, 3Shape does plan to open the deposition tomorrow and make a record of what has transpired.

Further, as I recall, Planet Depos requires at least 24 or 48 hours of notice to cancel a deposition without incurring a cancellation fee. Since you - either on behalf of Align or Mr. Walsh - told us last Friday afternoon that he would attend the deposition and then attempted to retract that statement today - less than 24 hours before the deposition was scheduled to start - either Align or Mr. Walsh will bear Planet Depos' costs and fees for tomorrow.

Best,
David

---

Sent from Workspace ONE Boxer

On November 9, 2020 at 20:26:07 EST, Margeson, Grant N. <grantmargeson@paulhastings.com> wrote:

**EXTERNAL SENDER**

Hi David,

We have properly followed the rules and filed a timely motion with the Delaware court.  In the email below, we cite case law demonstrating that the dispute could properly proceed in Delaware and subject to the Delaware Local Rules, and note that your email below does not dispute the cited authority.  And, because of Mr. Walsh's motion, Local Rule 30.2 unequivocally states that neither Mr. Walsh nor his counsel are required to appear at the deposition.  We are abiding by the Federal and Local Rules.  Can you please confirm that 3Shape has released the court reporter and videographer for tomorrow?  We want to be respectful of their time, but if 3Shape insists on making a statement on the record tomorrow, then Mr. Walsh will have counsel present to make a counter-statement (although Mr. Walsh will no longer appear).  It is improper for you to require Mr. Walsh or counsel appear for a deposition tomorrow when it is properly off calendar.  We have confirmed this with our local counsel and ask you do the same.

And, to respond to the email below:  Mr. Walsh's motion for a protective order could not have been made before today, as the dispute only became ripe when Ms. Coghill responded late last night that 3Shape would not abide by the same procedures that 3Shape itself implemented in other cases.  Nor has the scope of the topics about which Mr. Walsh

would testify changed since we notified you that he would be available on 3Shape's unilaterally noticed date, so any purported preparation was done in contravention of that communication. And, despite what is implied below, we offered to have Mr. Walsh testify on issues related to U.S. Patent Nos. 9,675,430, 10,507,088, and 10,507,089 tomorrow and address any topics related to 3Shape's unrelated, improper counterclaims and the '420 and '294 patents after the Court rules on the parties' dispute—3Shape both refused that offer and refused to explain why that compromise would not satisfy 3Shape's legitimate discovery needs. In fact, as Ms. Coghill argued in her email below, "the appropriate mechanism is . . . to move for a protective order." We did just that and now follow the Local Rules that apply to this precise situation. There has been no attempt to obfuscate the discovery process. We had hoped for an amicable resolution whereas 3Shape has opted for an all-or-nothing approach instead of allowing time for the Court's guidance on the dispute.

Thanks,

Grant

---

PAUL
HASTINGS

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct:
+1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 |
grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Shaw, David J. <David.Shaw@Troutman.com>
**Sent:** Monday, November 9, 2020 3:42 PM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; Coghill, Kimberly E.
<Kimberly.Coghill@Troutman.com>; DE-Align-1949 <DE-Align-1949@paulhastings.com>;
'SKAlignTechnology@shawkeller.com' <SKAlignTechnology@shawkeller.com>
**Cc:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Mike Walsh Deposition

Hi Grant,

Both Align and Mr. Walsh have been in receipt of his subpoena for nearly six weeks (since September 29). The subpoena date of November 10th has never changed, nor has our expressed intent to take the deposition on that date. 3Shape provided ample opportunity for Mr. Walsh, via you – his counsel – to move that date to any time between October 15th and November 10th as was convenient to Mr. Walsh. Mr. Walsh holds information relevant to 3Shape's claims or defenses related to all patents-in-suit, as well as 3Shape's counterclaims and affirmative defenses. Align has been pursuing this lawsuit, including the '294 and '420 patents, against 3Shape for nearly two years and the parties just recently briefed and prepared to argue those patents during *Markman* two weeks ago before Chief Judge Stark.

As Mr. Walsh's counsel, you represented this past Friday afternoon that Mr. Walsh is available for deposition tomorrow, November 10th. We have prepared to proceed with Mr. Walsh's deposition at the noticed time, as we have made known to you – in your capacity both as Mr. Walsh and Align's counsel – repeatedly. We have prepared to minimize burden to Mr. Walsh by asking questions relating to all patents-in-suit and all defenses and counterclaims in a single deposition, in accordance with Rule 45. 3Shape has made every effort to be accommodating to Mr. Walsh.

Align's 11th hour motion – noticed just 18 hours before Mr. Walsh's deposition is scheduled to start and less than one business day after you said he would appear for the November 10th deposition – seems to be an attempt to obfuscate the discovery process. 3Shape will seek costs relating to the preparation and non-appearance of Mr. Walsh at tomorrow's deposition as well as any other appropriate remedies under the Federal Rules.

Best,
David

**David J. Shaw**
Direct: 202.220.1259 | Internal: 803-1259
david.shaw@troutman.com

troutman pepper
2000 K Street, N.W., Suite 600
Washington, DC  20006-1865
troutman.com

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Monday, November 9, 2020 3:03 PM
**To:** Coghill, Kimberly E. <Kimberly.Coghill@Troutman.com>; DE-Align-1949 <DE-Align-1949@paulhastings.com>; 'SKAlignTechnology@shawkeller.com' <SKAlignTechnology@shawkeller.com>
**Cc:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Subject:** RE: Align v. 3Shape (1949) - Mike Walsh Deposition

**EXTERNAL SENDER**

Counsel,

We write to memorialize the meet and confer regarding Mr. Walsh's deposition. We will follow up on the other issues at a later time, as we wanted to get this out expeditiously.

3Shape refuses to limit its questioning of Mr. Walsh to issues related U.S. Patent Nos. 9,675,430, 10,507,088, and 10,507,089. 3Shape also refused to commit to not serving a subpoena in 1648. As a compromise, we offered to limit the deposition to the relevant issues tomorrow and then schedule a deposition in December to address 1648 issues and any other outstanding issues pending resolution of the dispute by the Court. 3Shape refused this reasonable request, despite considering something similar for another third party subpoenaed by 3Shape during the same meet and confer. In addition, 3Shape refused to commit that any member of Troutman Pepper was available for a deposition on any day in December, or even provide a timely response as to which days 3Shape was available. Nor would 3Shape explain why it must have Mr. Walsh's deposition tomorrow. 3Shape merely stated it would not disclose its litigation strategy for discovery timing or how a December deposition would disrupt that strategy given 3Shape has no other depositions scheduled at this time in this case. Regarding 3Shape's position that Mr. Walsh should have moved earlier, we informed you that Mr. Walsh was able to find time in response to your request to make 3Shape's self-imposed November 10 deposition deadline possible. Since that meet and confer, after-occurring developments now necessitate the motion given 3Shape's unreasonable position and refusal to cooperate to reach a reasonable resolution. It is wasteful of Mr. Walsh's time to make him sit there and be instructed not to answer questions, especially when there are months remaining in fact discovery for resolving the dispute.

Given 3Shape's position, we intend to file a motion for teleconference pursuant to Judge Hall's procedures. Please provide three dates on which you are available for a teleconference by 4 pm Eastern today—we can be available Wednesday through Friday of next week, or Monday and Tuesday of the following week. While 3Shape suggested that any motion would need to be made in the District of Massachusetts, Federal Rule of Civil Procedure 26(c) permits filing a motion for a protective order in "the court where the action is pending[.]" *See also Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 246 (4th Cir. 2009); *Pennsylvania by Shapiro v. Think Fin., LLC*, No. 14-CV-7139, 2018 WL 4635750, at *6–7 (E.D. Pa. Sept. 26, 2018). Our local counsel will circulate the discovery dispute motion and include email discovery in that motion, as the parties agreed that the issue was ripe for resolution by the Court. If we do not hear from you we will note in the motion that 3Shape did not respond to our request for availability, and provide Align's availability.

Pursuant to Local Rule 30.2, the filing of the motion means that Mr. Walsh has no obligation to appear at the noticed deposition tomorrow and, accordingly, will not appear.

We remain available to discuss an amicable resolution should 3Shape desire to proceed in a different manner. We had hoped for an amicable resolution without the need for Court involvement.

Thanks,

Grant

---

**PAUL HASTINGS**

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct:
+1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 |
grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Margeson, Grant N.
**Sent:** Sunday, November 8, 2020 11:14 PM
**To:** 'Coghill, Kimberly E.' <Kimberly.Coghill@Troutman.com>; DE-Align-1949 <DE-Align-1949@paulhastings.com>; 'SKAlignTechnology@shawkeller.com' <SKAlignTechnology@shawkeller.com>
**Cc:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Subject:** RE: Align v. 3Shape (1949) - Mike Walsh Deposition

Hi Kim,

Again putting aside 3Shape's unnecessary rhetoric, with which we disagree, to focus on the core of the dispute:

First, we again ask that you take any 1648 deposition at the same time as the 1949 deposition, given that Mr. Walsh is a third party (who you have previously deposed twice) and that it would be most respectful of Mr. Walsh's time to not repeatedly burden him with subpoenas.

Second, when 3Shape decided to dismiss a patent in the 886 action, it immediately and unilaterally refused further discovery on that patent. Align here is following the exact same procedure 3Shape employed in the 886 action.

Third, regardless of whether 3Shape agrees or disagrees, and as noted in my email below, we will instruct Mr. Walsh to not answer any questions regarding the '420 and '294 patents and to not answer questions about 3Shape's counterclaims subject to Align's motion to dismiss. 3Shape's email below indicates that 3Shape fully understands (a) that we will instruct Mr. Walsh to not answer such questions and (b) the boundaries of the testimony that will be permitted. Therefore, any costs and fees incurred by 3Shape in taking the deposition is done knowing full well the scope of the deposition that will be permitted. As stated below, if 3Shape wants Mr. Walsh to answer questions on its improper counterclaims subject to Align's motion to dismiss or the '420 and '294 patents, 3Shape must move to compel.

We are happy to discuss this on the meet and confer scheduled for tomorrow. Mr. Walsh previously requested 3Shape's permission to resolve any disputes through the Delaware Court's discovery dispute procedure, but 3Shape never responded despite its recognition that the request was reasonable and promise to promptly inform Mr. Walsh of 3Shape's position. We remain willing to invoke the Delaware Court's discovery dispute process to resolve any motion to compel filed by 3Shape with respect to the scope of Mr. Walsh's testimony.

Thanks,

Grant

---

PAUL HASTINGS

**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct:
+1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 |
grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Coghill, Kimberly E. <Kimberly.Coghill@Troutman.com>
**Sent:** Sunday, November 8, 2020 7:20 PM
**To:** Margeson, Grant N. <grantmargeson@paulhastings.com>; DE-Align-1949 <DE-Align-1949@paulhastings.com>; 'SKAlignTechnology@shawkeller.com' <SKAlignTechnology@shawkeller.com>
**Cc:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Mike Walsh Deposition

Grant,

Thank you for confirming Mr. Walsh will comply with the date of his original subpoena of which his counsel has been on notice for six weeks now. As you are well aware the 1648 action and the 1949 action are running on different schedules, and defendant 3Shape is entitled to take discovery in the actions as necessary. The e-mail records regarding Mr. Walsh's deposition will show that 3Shape has done everything possible to limit the burden on Mr. Walsh with respect to Tuesday's deposition.

Regarding the scope of Mr. Walsh's testimony, we intend to depose Mr. Walsh as to all pending claims and counterclaims, including all equitable defenses relating to the five patents-in-suit. Discovery in this action is not stayed nor have you provided, as Align's counsel, any reason that 3Shape is not entitled to discovery on the five patents-in-suit (all of which were the subject of a *Markman* hearing two weeks ago before Chief Judge Stark).

Moreover, we disagree with your assertion that 3Shape is not entitled to conduct discovery on the counterclaims subject to Align's Motion to Dismiss, which were timely and properly brought by 3Shape in the 1949 action. We note that none of these state-law counterclaims were specific to the '420 or '294 patents. We have reviewed the case law you cite in your e-mail below and find it inapposite to the situation at hand. If Align disagrees, the appropriate mechanism is for Align to move for a protective order or to stay discovery related to the three state-law counterclaims pending resolution of the Motion to Dismiss (as 3Shape did when its motion regarding privilege issues relating to European Patent Attorneys was pending before the Court).

As such, 3Shape will continue to prepare for Mr. Walsh's deposition relating to all pending claims and counterclaims. 3Shape expects that the deposition will proceed according to local rules in Delaware, and that Counsel for Mr. Walsh and Align will limit objections to form. Should counsel instruct Mr. Walsh not to answer any questions on the record, we expect a short and concise statement explaining the reason why to be stated thereon. We will not engage in lengthy dialogue or tolerate speaking objections which obstruct 3Shape's ability to obtain the discovery to which it is entitled on the patents which Align has continued to prosecute in the 1949 action for nearly two years.

We reserve all rights to seek costs, fees, and sanctions, if applicable, with respect to Mr. Walsh's deposition preparation and deposition should counsel for Mr. Walsh or Align fail to comply with the Federal Rules or the obligations of professional responsibility.

Regards,

Kim

---

**From:** Margeson, Grant N. <grantmargeson@paulhastings.com>
**Sent:** Friday, 6 November, 2020 16:50
**To:** Coghill, Kimberly E. <Kimberly.Coghill@Troutman.com>; DE-Align-1949 <DE-Align-1949@paulhastings.com>; 'SKAlignTechnology@shawkeller.com' <SKAlignTechnology@shawkeller.com>
**Cc:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Subject:** RE: Align v. 3Shape (1949) - Mike Walsh Deposition

**EXTERNAL SENDER**
Hi Kim,

Thank you for your follow up email. We note that 3Shape's emails below are replete with mischaracterizations, which we will not address in an attempt to move toward resolution instead of retreading the same ground.

We were able to make 3Shape's unilateral demand for a November 10 deposition (regardless of the convenience to the witness) work with Mr. Walsh's schedule. Please let us know if 3Shape seeks Mr. Walsh's deposition in 1648. If so, then Mr. Walsh, as a third party, should be deposed only once and 3Shape should serve a subpoena in 1648.

Similarly, given the discussions between Gooch and Christina regarding the narrowing of the 1949 case, Mr. Walsh's testimony will be limited to the 1949 issues related to U.S. Patent Nos. 9,675,430, 10,507,088, and 10,507,089. And, while we disagree that Mr. Walsh has information relevant to 3Shape's "affirmative defenses and counterclaims," no discovery will be permitted on counterclaims subject to Align's motion to dismiss or affirmative defenses related to the '420 and '294 patents. As our co-counsel identified for you, courts have recognized that it is inappropriate to conduct merits discovery on a claim while a motion to dismiss for *forum non conveniens* or a motion to transfer venue is pending. *See, e.g.*, *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30 (1970); *Barak v. Zeff*, 289 F. App'x 907, 915-16 (6th Cir. 2008). We will enforce the scope of Mr. Walsh's deposition accordingly. To be clear so that 3Shape is on full and complete notice: We will instruct Mr. Walsh not to answer questions regarding 3Shape's counterclaims subject to Align's motion to dismiss and not to answer questions about subject matters irrelevant to U.S. Patent Nos. 9,675,430, 10,507,088, and 10,507,089. If 3Shape disagrees, we respectfully request that 3Shape move to compel prior to taking the deposition instead of afterward so as to be respectful of Mr. Walsh's time, but we will enforce the scope we have identified barring a contrary order from the Court.

Finally, Mr. Walsh, as a third party, is willing to allow cross-use of his 886 deposition transcript in the 1949 case if it removes the need for the deposition or a reduction in the amount of hours 3Shape seeks from Mr. Walsh. We think such an agreement makes sense. Please let us know your thoughts, and we can discuss a similar agreement for 1648 should 3Shape find that helpful.

Please let us know how 3Shape would like to proceed and if you would like to discuss.

Thanks,

Grant

---



**Grant Margeson | Associate, Litigation Department**
Paul Hastings LLP | 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111 | Direct: +1.415.856.7016 | Main: +1.415.856.7000 | Fax: +1.415.856.7116 |
grantmargeson@paulhastings.com | www.paulhastings.com

**From:** Coghill, Kimberly E. <Kimberly.Coghill@Troutman.com>
**Sent:** Wednesday, November 4, 2020 8:35 AM
**To:** DE-Align-1949 <DE-Align-1949@paulhastings.com>; 'SKAlignTechnology@shawkeller.com'
<SKAlignTechnology@shawkeller.com>
**Cc:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Subject:** [EXT] RE: Align v. 3Shape (1949) - Mike Walsh Deposition

Grant,

3Shape has taken all reasonable steps to prevent Mr. Walsh from shouldering unnecessary costs or burden in connection with his deposition which was noticed for November 10th in late September and which has been scheduled for over a week now.  We note your failure to respond to the below e-mail.

Because we have not heard from you and no Motion to Quash the subpoena to Mr. Walsh has been filed, we are forced to proceed with preparing for Mr. Walsh's deposition on November 10th with the expectation that he will comply with the subpoena.  We must do so in order to  protect our client's right to obtain discovery relevant to 3Shape's affirmative defenses and counterclaims in the 1949 Action.

This correspondence serves as notice that we intend to move to compel compliance with the subpoena and seek costs for both preparation and the deposition should Mr. Walsh fail to appear on November 10th.

Regards,

Kim

---

**From:** Coghill, Kimberly E.
**Sent:** Tuesday, 27 October, 2020 08:51
**To:** DE-Align-1949@paulhastings.com>; 'SKAlignTechnology@shawkeller.com'
<SKAlignTechnology@shawkeller.com>
**Cc:** 3Shape_1949_Pepper <3Shape_1949_Pepper@Troutman.com>
**Subject:** Align v. 3Shape (1949) - Mike Walsh Deposition

Grant,

On October 14th, you first indicated that Mr. Walsh was unavailable for his deposition date of November 10th set forth in the subpoena which was served on Mr. Walsh September 29th.  We asked you for alternative dates for Mr. Walsh's deposition prior to November 10th on the following day, October 15th.  To date, you have declined to provide any alternative availability for Mr. Walsh prior to November 10th despite 3Shape's offer to depose Mr. Walsh, remotely, at the time of his choosing, including nights or weekends if necessary, from the comfort of his own home.

During last Friday's meet and confer, you were unable to provide a concrete explanation as to why Mr. Walsh is unavailable on November 10th or any day prior, despite 3Shape's request that you be prepared to do so.

3Shape continues to take all reasonable steps to avoid imposing undue burden or expense on Mr. Walsh, but will not tolerate what appear to be dilatory tactics.  We will move forward with scheduling the November 10th deposition to make record of Mr. Walsh's failure to appear and ensure that 3Shape's rights are protected.  3Shape remains available upon reasonable notice to reschedule Mr. Walsh's deposition at a time of his convenience between now and November 10th.

Regards,

Kim

**Kimberly E. Coghill**

Direct: 202.220.1246 | Internal: 803-1246
kimberly.coghill@troutman.com

**troutman** pepper
2000 K Street, N.W., Suite 600
Washington, DC  20006-1865
troutman.com

A HIGHER COMMITMENT TO CLIENT CARE
Troutman Pepper is a 2020 Mansfield Certified Plus Firm

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.
<mg_info.txt>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

# Exhibit G

Walsh Mike 111020 Rough Draft

Page 1

```
 1

 2

 3                     NOTICE

 4

 5

 6    This transcript is an UNCERTIFIED ROUGH DRAFT

 7   TRANSCRIPT.  It contains the raw output from the

 8   court reporter's stenotype machine, translated into

 9   English by the court reporter's computer, without

10   the benefit of proofreading.  It will contain

11   untranslated steno outlines, mistranslations (wrong

12   words), and misspellings.  These and any other

13   errors will be corrected in the final transcript.

14   Since this rough draft transcript has not been

15   proofread, the court reporter cannot assume

16   responsibility for any errors therein.

17    This rough draft transcript is intended to assist

18   attorneys in their case preparation and is not to be

19   construed as the final transcript.  It is not to be
```

Page 1

Walsh Mike 111020 Rough Draft

20  read by the witness or quoted in any pleading or for

21  any other purpose and may not be filed with any

22  court.

23

24

25

Page 2

1           MS. COGHILL:  This is Kim Coghill, of

2   Troutman Pepper, on behalf of Defendants 3Shape.

3           And this transcript is to make record of

4   Mr. Mike Walsh's failure to appear for deposition

5   on November 10, the date set forth in his Rule 45

6   Subpoena, served September 29 on Align's counsel.

7           To date, no motion to quash or motion to

8   amend the subpoena has been filed in the District

9   of Massachusetts, where Mr. Walsh's deposition was

10  scheduled to take place.

11          This transcript is solely to make a

12  record of Mr. Walsh's failure to appear and to

13  preserve 3Shape's rights to enforce a subpoena

14  served on Mr. Walsh on September 29.

Page 2

Walsh Mike 111020 Rough Draft

15          MS. ONDRICK:  And this is Christina

16   Ondrick, with Paul Hastings, representing Mr.

17   Walsh as well as Align.  And with me is Mr. Jeff

18   Castellano, with the law firm of Shaw Keller,

19   representing Align.

20          Mr. Walsh disagrees with Ms. Coghill's

21   representations.  Mr. Walsh filed a motion in the

22   District Court of Delaware, appearing at DI 165.

23   And pursuant to the local rules, pending

24   resolution of any motion under Federal Rule of

25   Civil Procedure 26(c) or 30(d), or such other form

                                        Page 3

1   of application for relief as the court may

2   prescribe, neither the objecting party witness nor

3   any attorney is required to appear at a deposition

4   to which a motion is directed until the motion is

5   resolved.

6          Therefore, it is our position that Mr.

7   Walsh nor counsel needed to appear today, and the

8   deposition is properly off calendar subject to the

                          Page 3

Walsh Mike 111020 Rough Draft

 9   pending motion in Delaware.

10           MS. COGHILL:  And 3Shape disagrees with

11   Align and Mr. Walsh's position with respect to the

12   Delaware motion.

13           MS. ONDRICK:  And I believe this

14   concludes the deposition record.

15

16

17

18

19

20

21

22

23

24

25

# Exhibit H

| | |
|---|---|
| **From:** | Shaw, David J. |
| **To:** | Mailing List - Align; DE-Align-0886; SKAlignTechnology@shawkeller.com |
| **Cc:** | 3Shape_886_Pepper |
| **Subject:** | [EXT] 18-886-LPS: Dismissal of claims and counterclaims Re: 244 patent |
| **Date:** | Tuesday, August 4, 2020 4:49:36 PM |
| **Attachments:** | 2020-08-04 Stipulation re 244 Patent.docx |

Counsel,

In order to streamline the above-captioned case, 3Shape is willing to dismiss its allegations of infringement with respect to the 244 patent without prejudice if Align will dismiss its declaratory judgment counterclaims regarding the 244 patent.  A draft stipulation is attached – please confirm whether we have Align's consent to file.

Given this notice:

- 3Shape will not provide any further discovery or supplemental discovery regarding the 244 patent;
- 3Shape withdraws all of its 30(b)(6) designations related to color scanning and/or the 244 patent;
- please advise if there are any 3Shape depositions that Align will drop so that we can cancel and release the witness's time;
- please advise if Align will agree not to call any of the Align deposition witnesses to trial in this matter so that we can evaluate whether to cancel any currently-scheduled Align depositions.

Please let me know if you would like to discuss.

Best,
David

**David J. Shaw**
Direct: 202.220.1259 | Internal: 803-1259
david.shaw@troutman.com

**troutman** pepper
2000 K Street, N.W., Suite 600
Washington, DC  20006-1865
troutman.com

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.